UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADIL HIRAMANEK, *et al.*, | No. C-13-0228 EMC |
| Plaintiffs, | |
| v. | **ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION** |
| L. MICHAEL CLARK, *et al.*, | |
| Defendants. | **(Docket No. 228)** |

Plaintiffs Roda and Adil Hiramanek – mother and son, respectively – initiated this lawsuit against multiple defendants, including the Santa Clara Superior Court, its judges, and other court employees, asserting that their civil rights were violated, largely in conjunction with family law proceedings involving Mr. Hiramanek. Plaintiffs moved for leave to proceed in forma pauperis. The Court granted the motion but, pursuant to 28 U.S.C. § 1915(e), dismissed the bulk of the claims asserted. More specifically, all of Ms. Hiramanek's claims were dismissed with prejudice, except for her claim for disability discrimination pursuant to the ADA and California Civil Code § 51, as pled against the Superior Court only. As for Mr. Hiramanek, all of his claims were dismissed. Most of Mr. Hiramanek's claims were dismissed with prejudice. The Court gave Mr. Hiramanek leave to amend with respect to two claims only, *i.e.*, the tenth and seventeenth causes of action. Subsequently, Plaintiffs asked that the time to file an amended complaint be deferred so that they could first seek reconsideration of the Court's dismissal rulings. The Court granted that request. *See* Docket No. 34 (order).

Accordingly, currently pending before the Court is Plaintiffs' motion for reconsideration. Having considered Plaintiffs' papers, the Court hereby **DENIES** the motion.

## I. DISCUSSION

As a preliminary matter, the Court notes that, typically, before a party can file a motion to reconsider, it must first seek leave to file a motion to reconsider. *See* Civ. L.R. 7-9(a). Under Civil Local Rule 7-9(b), a party seeking leave to file a motion to reconsider must make a showing of, *e.g.*, a manifest failure by the court to consider material facts or dispositive legal arguments which were presented to the court before its interlocutory order. *See* Civ. L.R. 7-9(b)(3). Civil Local Rule 7-9(b), however, does not have proper application here because the Court's dismissal order was issued as part of its § 1915(e) review; in other words, Plaintiffs never had a prior opportunity to make legal arguments to the Court in support of their claims. Accordingly, the Court shall consider Plaintiffs' motion to reconsider on the merits, without applying the standards of Civil Local Rule 7-9(b).

### A. "Manifest Error #1"

Plaintiffs argue first that the Court erred in its rulings with respect to the JCC and Mr. Yamasaki because (1) the Court erroneously misread Plaintiffs' complaint as alleging that the JCC is a sub-unit of the Superior Court and (2) the Court erroneously stated that Mr. Yamasaki's title is Court Executive Office when in fact Plaintiffs pled that his title is Chief Executive Officer. *See* Mot. at 3.

The Court rejects both arguments. First, even if the Court misconstrued Plaintiffs' complaint with respect to the JCC, the fact remains that the JCC is an arm of the state, a fact that Plaintiffs themselves admit. *See* Mot. at 3 (asserting that the JCC is "'part of the California Judicial Branch'"). Thus, the JCC is entitled to the immunities of the state, just like the Superior Court is entitled to these immunities as an arm of the state. In short, even if the Court erred, the error had no effect on the substantive analysis. Second, Plaintiffs have failed to show how any difference in Mr. Yamasaki's title is material. The Court also notes that Mr. Yamasaki's correct title, of which the

///

///

///

Court may take judicial notice, *see* Fed. R. Evid. 201(b), is in fact Court Executive Officer.[1] *See* http://www.courts.ca.gov/20711.htm (last visited July 18, 2013).

B. "Manifest Error #2"

Plaintiffs argue next that the Court erred in stating that many of their claims were "deficient in that they fail to identify the specific wrongdoing that each defendant allegedly committed." Docket No. 19 (Order at 3). The Court does not agree. As the Court noted in its order, "[w]hile in some claims Plaintiffs *do* attribute specific wrongdoing to some defendants, for many defendants the alleged wrongdoing is completely absent or simply consists of a conclusory allegation of ratification [or] wrongdoing committed by another defendant." Docket No. 19 (Order at 3) (emphasis added). Moreover, the Court's ruling that Plaintiffs had failed to identify specific wrongdoing is, to a certain extent, immaterial because the Court clearly provided "substantive grounds for dismissal of most claims" – *e.g.*, based on judicial immunity. Docket No. 19 (Order at 3). Those substantive grounds were the basis for the Court's dismissal of the claims with prejudice.

C. "Manifest Error #3"

Plaintiffs assert as a third manifest error the Court's ruling that the acts of the state court judges and employees were protected by judicial immunity. Plaintiffs contend that only judicial acts are protected and these defendants took instead administrative acts, acts for which they had no jurisdiction, and prosecutorial acts. *See generally Ashelman v. Pope*, 793 F.2d 1072, 1075-76 (9th Cir. 1986) (noting that judicial immunity protects only judicial acts). Plaintiffs also argue that, even if there were judicial immunity from damages, they still have viable claims for injunctive or declaratory relief.

    1. Administrative Acts

        a. Denying ADA Accommodation

Plaintiffs contend that the act of denying an ADA accommodation is an administrative and not a judicial act. That argument, as the Court previously noted, is foreclosed by *Goldblatt v.*

---

[1] The Court acknowledges that Plaintiffs have submitted a copy of what appears to be a letter from Mr. Yamasaki in which his title is identified as "Chief Executive Officer." *See* Pls.' Ex. T (letter).

*Doerty*, 503 Fed. App. 537 (9th Cir. 2013), where the Ninth Circuit held that "[t]he district court properly dismissed [the plaintiff's] claims regarding defendant's alleged denial of ADA accommodations because they arose out of defendant's rulings in his capacity as a judge presiding over a state court family law proceeding, and, therefore, were barred by absolute judicial immunity." *Id.* at 537.

### b. Vexatious Litigant Declaration

Plaintiffs assert that Judge Clark's designation of Mr. Hiramanek as a vexatious litigant constituted an administrative act. But the authority on which they rely does not support this position. For example, in *Luckett v. Panos*, 161 Cal. App. 4th 77 (2008), the state court simply noted that (1) under California Code of Civil Procedure § 391.7, a court may enter, on its own motion, a prefiling order prohibiting a vexatious litigant from filing new litigation without leave of the court; and that (2) when a court acts on its own motion, "there is no traditional adversarial proceeding between two litigants generating the section 391.7 prefiling order," but rather "an administrative proceeding action by the court itself." *Id.* at 95. Simply because a *proceeding* is deemed administrative rather than adversarial says nothing about whether a § 391.7 determination by a court is a judicial or administrative *act*.

As for *Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004), the Ninth Circuit merely suggested that, where a court declares a person a vexatious litigant on its own motion, there may be some question as to whether the court is entirely neutral. *See id.* at 365-66 (considering whether there was a case or controversy between the court and the plaintiff that could give rise to Article III subject matter jurisdiction). While the Ninth Circuit also made a ruling that Chief Justice George, one of the named defendants, could not claim the protection of judicial immunity from suit, this was only because the plaintiff had sued him in his administrative capacity as Chair of the Judicial Council. *See id.* at 366. In other words, Chief Justice George did not make any ruling himself as a judge finding a person a vexatious litigant. That is different from the case here where that act was taken as a judge *qua* judge.

Finally, the Court notes that several district courts have held that a judge's decision to declare an individual a vexatious litigant is protected by judicial immunity. *See, e.g.*, *Farias v.*

*Chapin*, No. 1:09cv1228 LJO DLB, 2009 U.S. Dist. LEXIS 66453, at *4-5 (E.D. Cal. July 31, 2009); *Latronica v. Superior Court of Cal.*, No. 1:09cv1162 AWI DLB, 2009 U.S. Dist. LEXIS 63027, at *8 (E.D. Cal. July 15, 2009); *Foley v. Bates*, No. C 06-7294 PJH, 2007 U.S. Dist. LEXIS 27390, at *30 (N.D. Cal. Mar. 30, 2007).

### c. Constitutionality of § 391

Relying on *Wolfe*, Plaintiffs also argue that they have a claim against Chief Justice Cantil-Sakauye because, like the plaintiff in *Wolfe*, they are challenging the constitutionality of California Code of Civil Procedure § 391 *et seq.* (*i.e.*, the vexatious litigant statute), and they are suing the Chief Justice in her administrative capacity. As a preliminary matter, this theory against Chief Justice Cantil-Sakauye was far from clear from Plaintiffs' complaint.

But even to the extent the theory is pled in the complaint, Plaintiffs' claim suffers for an independent reason. More specifically, in a subsequent opinion in the *Wolfe* case, the Ninth Circuit upheld California's vexatious litigant statute, even with respect to the plaintiff's equal protection challenge. *See Wolfe v. George*, 486 F.3d 1120 (9th Cir. 2007).

The Court acknowledges that, here, Plaintiffs do suggest some different bases for unfair discrimination – *i.e.*, (1) discrimination between self-represented litigants (who are subjected to the vexatious litigant statute) and represented litigants (who are not) and (2) discrimination between minority litigants and nonminority litigants. But as to (1), it is not clear that § 391 applies only to self-represented litigants. Vexatious litigant is defined in California Code of Civil Procedure § 391(b). While § 391(b)(1) through (3) define vexatious litigant as a self-represented person, § 391(b)(4) does not. *See* Cal. Civ. Code § 391(b)(4) (defining a vexatious litigant as a person who "[h]as previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence"). Even if Plaintiffs are correct that the distinction is made in § 391, the fact that the statute is thus underinclusive is not enough to establish an equal protection violation. *See Seariver Mar. Fin. Holdings v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002) (stating that "'[m]ere underinclusiveness is not fatal to the validity of a law'" under equal protection). Furthermore, there

is clearly a rational reason for the difference in treatment[2]: Attorneys for represented litigants are less likely to bring frivolous actions because they are officers of the court and are subject to the sanction of disbarment if they engage in vexatious conduct. The threat of disbarment is not something that self-represented litigants generally face (that is, unless they are also attorneys). As for (2), aside from the problem that it is not clear what minority class is being implicated, the theory is entirely speculative as evidenced by the face of Plaintiffs' complaint, in which they allege that "[a]verage persons and [Mr. Hiramanek] have entertained doubts as to [Judge Clark's] conduct towards minority class, self represented litigants." Compl. ¶ 45 (emphasis and footnote omitted). This claim is entirely conclusory and fails to satisfy applicable pleading standards. *See generally Bell Atlantic v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Nothing in Plaintiffs' motion suggests that this defect could be cured.

        d.        <u>Salary Affidavits</u>

Plaintiffs contend next that the filing of certain affidavits by Judges Clark and Persky constituted administrative acts, and not judicial ones. The affidavits at issue are those filed by Judges Clark and Persky pursuant to California Government Code § 68210. Under § 68210, "[n]o judge of a court of record shall receive his salary unless he shall make and subscribe before an officer entitled to administer oaths, an affidavit stating that no cause before him remains pending and undetermined for 90 days after it has been submitted for decision." Cal. Gov't Code § 68210.

While the filing of the affidavits could arguably be administrative acts, it is far from clear that Plaintiffs were seeking relief from either judge on the basis of these acts. Indeed, Plaintiffs only mention the affidavits in a footnote. *See* Compl. at 4 n.9. And even here it is not clear that Plaintiffs are claiming that the affidavits were false because Judges Clark and Persky had not rendered decisions in *their* case within 90 days after submission. Furthermore, there is no contention in the complaint that Plaintiffs suffered any injury from any failure to have a decision rendered within 90 days after submission. The Court acknowledges that, in their motion, Plaintiffs now claim injury –

---

[2] *See Romero-Ochoa v. Holder*, 712 F.3d 1328, 1331 (9th Cir. 2013) (explaining that, where a fundamental right is not implicated or a suspect class is not targeted, rational basis review applies to an equal protection challenge), *Wolfe v. George*, 486 F.3d at 1126 n.22 (noting that, when no suspect classification such as race, nationality, or alienage is present, rational review applies).

*i.e.*, "decisional delay to Plaintiffs' detriment." Mot. at 8. But even this does not counsel in favor of giving Plaintiffs an opportunity to amend in order to plead such. This is because nowhere in their motion do Plaintiffs make any assertions about the length of the delay that would give rise to a violation of their civil rights (*e.g.*, due process). *Cf. Hassanally v. Firestone*, 51 Cal. App. 4th 1241, 1245 (1996) (noting that there are circumstances in which censure of a judge is not appropriate even though a case has been under submission for more than 90 days" – *e.g.*, "'[i]t would be manifestly unreasonable . . . to censure or remove a competent judge whose workload . . . made prompt decision of all matters submitted to him impossible.'").

### e. Other Nonadversarial Acts

Plaintiffs contend that the state court judges engaged in other acts that should be deemed administrative because they are "nonadversarial" – *e.g.*, orders depriving Mr. Hiramanek from contact with his children and orders requiring Mr. Hiramanek to bear witness fees even though he had a fee waiver and the subpoena was quashed. The Court does not agree that these acts were administrative, as opposed to judicial, acts. Clearly, the acts were part of the judicial process in Mr. Hiramanek's case. *See Lacey v. Maricopa*, 693 F.3d 896, 930 (9th Cir. 2012) (focusing on whether a decision was made by a judge in a specific case over which he or she was presiding).

### 2. Acts for Which No Jurisdiction

Plaintiffs point out next that "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (stating that "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction"). In *Mireles*, however, the Supreme Court noted that this was different from whether a judge acted in *excess* of his authority. An act "taken in the very aid of the judge's jurisdiction over a matter before him . . . cannot be said to have been taken in the absence of jurisdiction." *Id.* at 13. Furthermore, the Ninth Circuit has held that, "[t]o determine if the judge acted with jurisdiction, courts focus on whether the judge was acting clearly beyond the scope of subject matter jurisdiction in contrast to personal jurisdiction." *Ashelman*, 793 F.2d at 1076 (en banc), *overruling Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980).

Given the above case law, none of Plaintiffs' contentions have merit. The examples given by Plaintiffs, *see* Mot. at 8-9 (claiming that state court judges were without "jurisdiction" to threaten an attorney with sanctions, to set aside a default entry, to make rulings that affected Mrs. Hiramanek's property and/or interests, and to deprive Mr. Hiramanek from having contact with his children), at most suggest that the state court judges may acted in excess of their authority. Nothing indicates that the state court judges actually lacked subject matter jurisdiction over the proceedings involving Plaintiffs.

### 3. Prosecutorial Acts

Plaintiffs contend that Judge Clark engaged in a prosecutorial act, not a judicial act, when he "caused [Mr. Hiramanek] to be detained on June 11, 2012," and "oversaw and orchestrated [Mr. Hiramanek's] arrest on June 29, [2012]." Mot. at 10; *see also* Compl. (seventeenth cause of action). The Court, however, did not dismiss the seventeenth cause of action based on judicial immunity grounds; rather, the Court explained that "Mr. Hiramanek has simply alleged in conclusory terms that the officers who detained and interrogated him were acting on [Judge Clark's] behalf. There are no factual allegations to support this cause of action." Docket No. 19 (Order at 12). The Court further notes that it gave Mr. Hiramanek leave to amend the seventeenth cause of action (as well as the tenth for which there was potentially a judicial immunity problem).

### 4. Injunctive and Declaratory Relief

Finally, Plaintiffs argue that the Court erred in finding that the state court judges and/or employees could not be held liable for injunctive or declaratory relief. Neither argument is convincing.

First, as the Court stated in its order, 42 U.S.C. § 1983 specifically provides that "injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983 (emphasis added). Plaintiffs' reliance on *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984) (stating that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity"), is unavailing because, "[w]hile [*Pulliam*] was accurate at one time, in 1996, Congress amended section 1983" so that the above provision now

1  governs. *Foulk v. Upton*, No. 03-12-cv-00400-AC, 2012 U.S. Dist. LEXIS 185144, at *25 (D. Or.
2  Nov. 27, 2012).

3      Second, while declaratory relief was an available remedy to Plaintiffs, the Court in its
4  discretion dismissed the claims seeking such relief because there were serious federalism concerns
5  as Plaintiffs were, in essence, challenging actions taken in state court family law proceedings. *See,*
6  *e.g.*, Docket No. 19 (Order at 4). *See, e.g.*, *Waris v. Frick*, No. 06-5189, 2007 U.S. Dist. LEXIS
7  22408, at *26 (E.D. Pa. Mar. 28, 2007) (noting that declaratory relief was available to plaintiff but
8  nevertheless dismissing request for a declaratory judgment as to some judicial defendants as a matter
9  of discretion).

10 D.    "Manifest Error #4"

11     As the fourth manifest error, Plaintiffs assert that the Court erred in taking note of federalism
12 concerns as a basis for dismissing the claims for declaratory relief. But, as the Court noted in its
13 order, in *Principal Life Insurance Co. v. Robinson*, 394 F.3d 665 (9th Cir. 2005), the Ninth Circuit
14 specifically stated that one factor for a court to consider in deciding whether to exercise jurisdiction
15 over a declaratory judgment claim is "'whether the use of a declaratory action will result in
16 entanglement between the federal and court systems.'" *Id.* at 672.

17     Plaintiffs' arguments in their motion are unavailing because the Court never relied on
18 *Younger* abstention as a basis to dismiss the claims for declaratory relief.

19 E.    "Manifest Error #5"

20     As a fifth manifest error, Plaintiffs challenge the Court's *Rooker-Feldman* conclusions.

21     As a preliminary matter, the Court notes that, even without the *Rooker-Feldman* conclusions,
22 dismissal would still be warranted because there were alternative, independent grounds for
23 dismissal.

24     Moreover, many of Plaintiffs' *Rooker-Feldman* arguments are problematic.[3] For example:

---

[3] Plaintiffs' best arguments are that (1) the Court should not have applied *Rooker-Feldman* to Ms. Hiramanek's claims because she was not a party to the underlying state court proceedings, *see Bennett v. Yoshina*, 140 F.3d 1218, 1224 (9th Cir. 1998) (stating that, "[s]ince the *Rooker/Feldman* doctrine applies only when the federal plaintiff was a party to the state case and is challenging an adverse decision by the state court, it follows that mere participation in the state case as amici does not invoke the Rooker/Feldman bar"), and that (2) the Court should not have applied *Rooker-*

- Plaintiffs contend that *Rooker-Feldman* is not implicated because they are not asking for review or rejection of a state court ruling; rather, they are seeking only a stay of the state court rulings. But *Rooker-Feldman* is implicated where a plaintiff is making a de facto appeal of a state court ruling. By asking the Court to stay the state court rulings, Plaintiffs are effectively asking the Court to render the rulings a nullity, and thus *Rooker-Feldman* is appropriate to consider. *See Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003) (stating that "[i]t is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, *and seeks relief from the judgment of that court*") (emphasis added).
- Plaintiffs argue that they are seeking relief from Defendants' wrongs, and not any state court ruling. But Defendants' wrongs – as pled by Plaintiffs – are in large part their rulings.
- Plaintiffs contend that a case cited by the Court, *Khanna v. State Bar of California*, 505 F. Supp. 2d 633 (N.D. Cal. 2007), actually supports their position, but the Court does not agree. In *Khanna*, this Court held that *Rooker-Feldman* did not apply because the plaintiff was seeking damages, and not relief from the order of the California Supreme Court disbarring him.[4] *See id.* at 642 (acknowledging that plaintiff was seeking a result that "would be based upon findings inconsistent with those underpinning the California Supreme Court's decision" but stating that this "implicates conventional preclusion rules" and "not a lack of jurisdiction"). Although, in the case at bar, Plaintiffs are seeking damages, the critical point is that they are *also* seeking in effect to get relief from the state court rulings, and thus

---

*Feldman* to Mr. Hiramanek's claims to the extent that at least some of the challenged state court rulings are still on appeal in the state court. *See Nicholson v. Shafe*, 558 F.3d 1266, 1279 (9th Cir. 2009) ("hold[ing] that state proceedings have not ended for purposes of *Rooker-Feldman* when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal court action that complaints of injuries caused by the state court judgment and invites review and rejection of that judgment"). But, even to the extent these arguments have merit, there were, as noted above, alternative, independent grounds for dismissal.

[4] The Court also noted that the plaintiff did not assert as a legal wrong an erroneous decision by the California Supreme Court but rather the illegal acts of other parties. *See Khanna*, 505 F. Supp. 2d at 642; *see also id.* at 638 (noting that plaintiff did not sue the California Supreme Court but rather brought suit only against the State Bar and employees involved in the investigation and hearing).

*Rooker-Feldman* is an obstacle. *See id.* at 644 (stating that, "[b]ecause the equitable relief sought in *Kougasian* involved *Rooker-Feldman*, the intertwining claims for damages [were] barred as well").

- Plaintiffs contend that *Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006), also establishes that *Rooker-Feldman* is not a bar to their claims. In *Loubser*, the Seventh Circuit held that *Rooker-Feldman* was not a bar to claims asserted by a plaintiff who contended that, in her divorce court proceedings, there was a vast conspiracy to defraud her – one that involved, *inter alia*, state court judges and court reporters. In reaching this holding, the *Loubser* court relied in large part on an earlier Seventh Circuit case, *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995). There, the Seventh Circuit noted that, if a plaintiff was simply claiming that the decision of a state court was incorrect or even that it denied him some constitutional right, the *Rooker-Feldman* doctrine would bar his claim. "But if he claims . . . that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he can, without being blocked by the *Rooker-Feldm*an doctrine, sue to vindicate that right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did him harm. . . . Otherwise there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment . . . ." *Id.* at 1005. But in both *Loubser* and *Nesses*, the plaintiff was seeking damages as a remedy. *See Loubser*, 440 F.3d at 442 (noting that plaintiff "wants damages for the harassment to which the defendants allegedly subjected her en route to the judgment"). As noted above, damages are part of the remedy sought by Plaintiffs but Plaintiffs also seek relief from the state court rulings which is squarely barred by *Rooker-Feldman*.

F. "Manifest Error #6"

Plaintiffs further contend that the Court erred when it concluded that they had made only conclusory allegations against Mr. Baugh. But Plaintiffs have not fairly characterized the Court's ruling. The Court held that, for Mr. Baugh to be held liable under 42 U.S.C. § 1983, he had to have,

11

in essence, conspired with state actors such as the state court judges or employees but Plaintiffs' *allegations of conspiracy* were either conclusory *or* speculative and thus failed to satisfy the pleading standards under *Twombly*, 550 U.S. at 544, and *Iqbal*, 129 S. Ct. at 1937. Nothing in Plaintiffs' motion points to nonconclusory or nonspeculative conspiracy allegations in the complaint, nor does Plaintiffs' motion suggest that they could assert any nonconclusory or nonspeculative conspiracy allegations in an amended complaint. *See, e.g.*, Mot. at 5 (speculating that Mr. Baugh tried to influence the outcome of Plaintiffs' state court appeal because a senior partner at his firm was previously in private practice with an appellate judge, *i.e.*, Judge Premo).

G.  "Manifest Error #7"

Finally, Plaintiffs contest Eleventh Amendment conclusions made by the Court.

1.  ADA

In its prior order, the Court allowed Ms. Hiramanek's ADA claim to survive, but only as pled against the Superior Court, which is an arm of the state. Plaintiffs seem to argue that Defendants other than Mr. Baugh should not have been dismissed because they are also arms of the state. But, in its prior order, the Court explained in detail why the other defendants were entitled to dismissal – not because they are arms of the state but rather because, *e.g.*, the state court judges and employees have judicial immunity, and Ms. Hiramanek failed to identify any denial of ADA accommodations by the County (as opposed to the Superior Court).[5]

2.  Injunctive and Declaratory Relief

Plaintiffs maintain that, to the extent they have filed suit against the state court judges and/or employees in their official capacities, seeking injunctive or declaratory relief, those claims are not barred by Eleventh Amendment immunity pursuant to the *Ex Parte Young* doctrine. There are two problems with their position. First, the *Ex Parte Young* doctrine applies only where prospective injunctive or declaratory relief is sought *See Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (holding that injunctions sought by plaintiff, which would expunge information from university records, were "not limited merely to past violations: they serve the purpose of preventing present

---

[5] Contrary to what Plaintiffs suggest, the Court never held that the County is an arm of the state and therefore entitled to Eleventh Amendment immunity.

and future harm to [plaintiff]"). Here, at least some of the injunctive or declaratory relief sought in Plaintiffs' complaint seem to be for the purpose of addressing past harm, not present or future harm. *See, e.g.*, Compl. at 63 (asking for a declaration that "complained of defendants' act(s) under each count violated the respective federal and state rights listed under that count"). Second, even where Plaintiffs are seeking prospective relief, this Court never made a ruling that Eleventh Amendment immunity barred claims against the state court judges or employees in their official capacities. Rather, as discussed above, the Court held that § 1983 bars injunctive relief, *see* 42 U.S.C. § 1983 (providing that "injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable"), and that the Court in its discretion declined to exercise discretion over the declaratory relief claims.

### 3. Damages

Plaintiffs contend that claims for damages against state actors are not barred by the Eleventh Amendment, but the Court never made any such ruling. Rather, the Court held that the state court judges and employees were protected from damages by judicial immunity. *See* Docket No. 19 (Order at 3-4).

### 4. Title VI

Plaintiffs argue next that Eleventh Amendment immunity is not applicable to a Title VI claim, but there are several problems with this argument. First, Plaintiffs never pled a Title VI claim and thus this Court never made a holding that Eleventh Amendment immunity was a bar to such a claim. Second, Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Plaintiffs have not alleged facts establishing the state court is a covered program.

### 5. Without Prejudice

Finally, Plaintiffs contend that, even if the Eleventh Amendment is a bar as to some defendants, "the court must dismiss the action *without* prejudice to it being refiled in a state court." Mot. at 25 (emphasis added). *See, e.g.*, *Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (instructing district court to modify its decision to specify that FEHA claim, barred

in federal court by Eleventh Amendment, was dismissed without prejudice to it being refiled in state court). However, while the Court dismissed with prejudice, *e.g.*, the § 1983 claims against the Superior Court, it did so on the ground that "[a] suit against a state *in federal court* is barred under the Eleventh Amendment." Docket No. 19 (Order at 5) (emphasis added). Clearly, this ruling made no statement as to whether a suit could be brought in state court. However, to the extent Plaintiffs seek clarification for the record, the Court now confirms that the dismissal by the Court, to the extent based on the Eleventh Amendment, was without prejudice to Plaintiffs reasserting the claim in state court.

## II. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for reconsideration. Consistent with the Court's order of June 7, 2013, Plaintiffs have fourteen days from the date of this order to file an amended complaint. *See* Docket No. 34 (order).

This order disposes of Docket No. 228.

IT IS SO ORDERED.

Dated: July 19, 2013

_____
EDWARD M. CHEN
United States District Judge