UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADIL HIRAMANEK, *et al.*, | No. C-13-0228 EMC |
| Plaintiffs, | |
| v. | **ORDER RE PLAINTIFFS' AMENDED COMPLAINT** |
| L. MICHAEL CLARK, *et al.*, | |
| Defendants. | **(Docket No. 37)** |

Previously, the Court granted the *in forma pauperis* applications of Plaintiffs Roda and Adil Hiramanek (mother and son). However, pursuant to its 28 U.S.C. § 1915(e)(2) review, the Court dismissed with prejudice the bulk of Plaintiffs' claims. *See* Docket No. 19 (Order at 12-13). The Court gave Mr. Hiramanek leave to amend certain claims, noting that it would continue to evaluate any amended complaint pursuant to § 1915(e)(2). *See* Docket No. 19 (Order at 13). Thereafter, Plaintiffs filed an amended complaint. Having evaluated that amended complaint pursuant to § 1915(e)(2), the Court hereby rules as follows.

## I. DISCUSSION

A. <u>Amendments Beyond the Scope of the Court's Order</u>

In its prior order, the Court dismissed all of Ms. Hiramanek's claims with prejudice, except for one. The one claim that survived dismissal was her claim for disability discrimination against the Superior Court, brought pursuant to the Americans with Disabilities Act ("ADA") and California Civil Code § 51. *See* Docket No. 19 (Order at 12). As for Mr. Hiramanek, all of his claims were dismissed. Furthermore, all claims were dismissed with prejudice, except for two (related to

1  unlawful search and seizure and unlawful interrogation).  The Court gave Mr. Hiramanek leave to
2  amend the two claims within specific parameters.  *See* Docket No. 19 (Order at 13).

3  Notably, the Court instructed the parties that, "**[a]t this juncture, Mr. Hiramanek is not**
4  **permitted to make any amendments other those explicitly identified by the Court in this order.**
5  **Similarly, at this juncture, the only claim that Ms. Hiramanek may assert in Plaintiffs'**
6  **amended complaint is the claim that has survived dismissal . . . .**"  Docket No. 19 (Order at 13)
7  (emphasis in original).  The statement was bolded for the benefit of Plaintiffs.  The Court
8  intentionally restricted the scope of the amendments because its goal was to determine whether there
9  were at least *some* potentially viable claims such that the case should move forward and the pleading
10 be served.  Its goal was not to make a definitive determination as to the parameters of the case.

11 In spite of the Court's express order, Plaintiffs have made amendments beyond the scope
12 permitted.  For example:

13 •   In Count II, Ms. Hiramanek has added claims for disability discrimination pursuant to new
14     statutes and against a new defendant.  Her claims are also based in part on new facts – *i.e.*,
15     events that have transpired since the filing of the original complaint (*i.e.*, after January 17,
16     2013).  Furthermore, Mr. Hiramanek has now asserted disability discrimination claims
17     although he did not in the original complaint.

18 •   In Count X, Mr. Hiramanek has added claims for unlawful search and seizure pursuant to
19     new statutes and against new defendants.  In addition, he has asserted the claims against the
20     Superior Court even though the Court expressly dismissed the claims against the Superior
21     Court.

22 •   In Count XVII, Mr. Hiramanek has added claims for unlawful interrogation pursuant to new
23     statutes and against new defendants.  In addition, he has asserted the claims against the
24     Superior Court even though the Court expressly dismissed the claims against the Superior
25     Court.

26 •   In Count XIX, Mr. Hiramanek brings a claim for "obstruction" and "perversion of the course
27     of justice," which he never included in the original complaint.

28

2

Because these amendments were not permitted by the Court's order – indeed, were expressly prohibited – the Court strikes each of the amendments (with one exception) from the amended complaint.

The one exception where the Court does not strike is Ms. Hiramanek's *factual* allegations as to additional denials of requests for accommodation that took place after the filing date of the original complaint. The Court shall permit these allegations as they are sufficiently related to the allegations in the original complaint and as they do not dramatically expand upon the allegations in the original complaint.

B. Count II

As stated above, the Court strikes all amendments with respect to Count II (with one exception) because no amendments of Count II were permitted. The sole exception is that the Court does not strike the new *factual* allegations as to denials of Ms. Hiramanek's requests for accommodation which took place after January 17, 2013.

**Accordingly, at this juncture, Count II consists of a disability discrimination claim (1) brought by Ms. Hiramanek only (not Mr. Hiramanek) (2) against the Superior Court only (not Ms. Ku) and (3) pursuant to the ADA and California Civil Code § 51 only (not other statutes).**

C. Count X

As noted above, the Court strikes all amendments to Count X that were not permitted by the Court's prior order. Thus, at this juncture, Count X consists of an unlawful search and seizure claim brought by Mr. Hiramanek against (1) Judge Clark, Mr. Yamasaki, Judge Loftus, and the County and (2) pursuant to 42 U.S.C. §§ 1983 and 1988 (the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments) and the California Constitution, article I, § 13 only.

The Court now evaluates whether the allegations with respect to this claim survive § 1915(e)(2) review.

///
///
///
///

1. Section 1983[1]

   a. Judge Clark

As to Judge Clark, the Court begins by noting that some of the alleged misconduct identified by Mr. Hiramanek does not appear to be a constitutional violation. For example, Mr. Hiramanek suggests that, on December 30, 2011, Judge Clark ordered a deputy to shadow and monitor him while at the family courthouse, *see* SAC ¶ 82; he also suggests that Judge Clark routinely ordered deputies in the courtroom to stand close behind him during proceedings and breathe down his neck as a means of intimidation. *See* SAC ¶ 73. But such conduct does not constitute a search or seizure.

The Court also notes that, for some of the alleged misconduct, there are insufficient factual allegations to support Mr. Hiramanek's claim that the misconduct was directed by Judge Clark. For example, Mr. Hiramanek alleges that, on June 8, 2012, Judge Clark instructed Deputy Plett to approach Mr. Hiramanek in the family courthouse and "mak[e] provocative and hostile moves." SAC ¶ 77. But Mr. Hiramanek does not allege any facts substantiating that Defendant Plett was acting under the instructions of Judge Clark. These allegations do not state a plausible claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (stating that a complaint must include "enough facts to state a claim to relief that is plausible on its face"; a claim that is simply conceivable is subject to dismissal); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

However, Mr. Hiramanek has made allegations that he was subjected to a search and/or seizure and that he was actually told by the deputies involved that they were acting pursuant to Judge Clark's direction. For instance, Mr. Hiramanek alleges that, on June 11, 2012, he was leaving for a lunch break in a family court proceeding when several deputies detained him and confined him in a conference room where he was interrogated "for a considerable period of time." SAC ¶ 144. Mr. Hiramanek indicates that one of the deputies admitted to him that Judge Clark was behind this

---

[1] Although Mr. Hiramanek refers to § 1983 and § 1988 in his complaint, § 1988 is not an independent private right of action. It simply permits, *e.g.*, an award of attorney's fees in a § 1983 case.

4

"criminal persecution." SAC ¶ 143. As another example, Mr. Hiramanek alleges that, on January 14, 2013, he and his property successfully cleared the x-ray screening at the security entrance to the courthouse. But in spite of this fact, he was still subjected to a frisk and patdown and his property subjected to a detailed hand search, all pursuant to the direction of Judge Clark as one of the deputies expressly informed him. *See* SAC ¶¶ 67-71. As to these two incidents, it is arguably a question of fact as to whether Judge Clark would have judicial immunity for his actions, if he had in fact so instructed the deputies to act.[2]

Accordingly, the Court concludes that Mr. Hiramanek has adequately stated – at least in part – a claim against Judge Clark for purposes of § 1915(e)(2) review.

    b. <u>Mr. Yamasaki</u>

Mr. Hiramanek's claim against Mr. Yamasaki appears to be predicated on a supervisory liability theory – *i.e.*, that Mr. Yamasaki was a supervisor of Judge Clark but failed to take any action against Judge Clark after Mr. Hiramanek complained about Judge Clark's conduct. *See, e.g.*, *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (noting that, in a § 1983 case, "'[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others'"). But that Mr. Yamasaki was the Court or Chief Executive Officer, *see* SAC ¶ 9, does not in and of itself establish that he was Judge Clark's supervisor with respect to the alleged wrongful conduct. Similarly, even if Mr. Yamasaki was the final policymaker for the Superior Court, *see* SAC ¶ 14, that too does not establish that he was Judge Clark's supervisor.

Furthermore, even if Mr. Yamasaki was in fact Judge Clark's supervisor, there are other deficiencies in the amended complaint. For example, Mr. Hiramanek never alleges in the pleading that he made a specific complaint to Mr. Yamasaki that Judge Clark was ordering deputies in the

---

[2] The Court, however, does not agree with Mr. Hiramanek's suggestion that the place where the alleged searches and seizures took place dictates whether Judge Clark was engaging in a judicial or nonjudicial act. *See, e.g.*, SAC ¶ 64 (arguing that "Court security . . . in an area outside the courtroom, and outside of the chambers, does not fall within the province, or function of judges, including CLARK"). *See Lacey v. Maricopa*, 693 F.3d 896, 930-31 (9th Cir. 2012) (focusing on whether a decision was made by a judge in a specific case over which he was presiding).

courthouse to conduct unwarranted searches or seizures. The closest that Mr. Hiramanek comes to such an allegation is in ¶ 106 of the amended complaint. There, Mr. Hiramanek alleges that, on May 21, 2012, he wrote a letter to Mr. Yamasaki in which he recounted an incident involving, *inter alia*, a detailed search of his property by a deputy in the courthouse and an unjustified chastisement by another deputy. *See* SAC ¶ 106. Mr. Hiramanek then states in the letter: "'It appears that Judge Clark is poisoning the deputy personnel against me.'" SAC ¶ 106. But a claim that Judge Clark was "poisoning" the deputies against Mr. Hiramanek cannot be equated with a claim that Judge Clark was *ordering* the deputies to take certain acts against Mr. Hiramanek. Accordingly, Mr. Yamasaki was not fairly put on notice of the alleged unconstitutional conduct of Judge Clark – at least based on the allegations in the complaint. The complaint fails to state a claim for supervisory liability under § 1983. *See Starr*, 652 F.3d at 1207-08. *Cf., e.g.*, *Lemire v. California Dep't of Corr. & Rehab.*, No. 11-15475, 2013 U.S. App. LEXIS 16317, at *57 (9th Cir. Aug. 7, 2013) (in failure-to-train case, noting that a supervisor is "liable only if on actual or constructive notice of the need to train").

The Court therefore dismisses with prejudice the claim against Mr. Yamasaki. The Court has already afforded Mr. Hiramanek an opportunity to amend the complaint.

        c.      <u>Judge Loftus</u>

Similar to above, Mr. Hiramanek's claim against Judge Loftus appears to be predicated on supervisory liability but, as above, nothing in the amended complaint indicates that Judge Loftus – even if he were the presiding judge of the Superior Court – was necessarily Judge Clark's supervisor with respect to the alleged wrongful conduct. Furthermore, even if Judge Loftus was in fact Judge Clark's supervisor by virtue of his being the presiding judge of the court, there are no allegations in the amended complaint that Mr. Hiramanek specifically informed Judge Loftus that Judge Clark was ordering deputies in the courthouse to conduct unwarranted searches or seizures. Absent such knowledge, Judge Loftus cannot be held liable under § 1983. *See Starr*, 652 F.3d at 1207-08.

The Court therefore dismisses with prejudice the claim against Judge Loftus.

///

///

### d. County

Finally, for the County to be held liable under § 1983, Mr. Hiramanek "cannot rely solely on respondeat superior liability. Instead, [he] must establish that 'the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [they] suffered.'" *AE v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (citing, *inter alia*, *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). There are "situations in which isolated constitutional violations are sufficient to establish a municipal 'policy.'" *Id.* For example, "a municipality can be liable for an isolated constitutional violation when the person causing the violation has 'final policymaking authority.'" *Id.* Also, a municipality "can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions" – *i.e.*, that the policymaker knew of the constitutional violation and approved it. *Id.* at 1238. Finally, a municipality can be liable where the final policymaker acted with deliberate indifference to the subordinate's constitutional violation. *See id.* at 1240.

Here, Mr. Hiramanek's claim against the County is deficient for several reasons. First, his theory seems to be that the County Council was the final policymaker for the County, which ratified or was deliberately indifferent to the actions of the deputies (*i.e.*, unlawful searches or seizures). *See* SAC ¶ 114. However, there are no allegations in his amended complaint (other than conclusory ones to which the Court gives no weight under *Twombly* and *Iqbal*) that the County Council knew that the deputies were engaging in unjustified searches and seizures. Indeed, the allegations in the amended complaint indicate that Mr. Hiramanek at best gave notice to the Internal Affairs Unit for the sheriff's office. *See, e.g.*, SAC ¶¶ 81, 112, 168. Second, Mr. Hiramanek's theory for holding the County liable depends on the deputies being County actors rather than state actors, but, as this Court has previously held, "state law establishes that sheriffs – and thus deputies as well – function as representatives of the state and not the county when providing courtroom security services." *Rojas v. Sonoma County*, No. C-11-1358 EMC, 2011 U.S. Dist. LEXIS 122276, at *11 (N.D. Cal. Oct. 21, 2011).

Accordingly, the Court dismisses the claim against the County with prejudice.

2. California Constitution, article I, § 13

As for the unlawful search and seizure claim based on the California Constitution, the Court finds that dismissal as to each of the defendants is justified for the following reasons.

First, as the Court noted in its prior order, the California Tort Claims Act ("CTCA") "requires a pre-litigation presentation of a claim for money damages" to the applicable public entity before a claim can be brought for judicial review. Docket No. 19 (Order at 9). Here, Mr. Hiramanek alleges that he made various complaints about the unlawful searches and seizures, but, for the County at least, the amended complaint does not allege the administrative complaint was directed to the appropriate person. *See* Cal. Gov't Code § 915 (addressing delivery or mailing of pre-litigation claim; providing, *e.g.*, that a claim may be made by delivering the claim to the clerk, secretary, or auditor of the local public entity or by mailing it to the clerk, secretary, auditor, or governing body of the local public entity). Furthermore, none of the complaints – except one – alleges that he demanded money damages. Even as to the one complaint where Mr. Hiramanek mentioned money damages, *see* SAC ¶ 89, the complaint did not "make it readily discernible . . . that the intended purpose [of the communication] is to convey the assertion of a compensable claim against the [public] entity *which, if not otherwise satisfied, will result in litigation*." *Green v. State Ctr. Comm. Coll. Dist.*, 34 Cal. App. 4th 1348, 1358 (1995) (emphasis added). Furthermore, for that complaint, there is nothing to indicate that it was specifically about unlawful searches and seizures orchestrated by Judge Clark. *See Stockett v. Association of Cal. Water Agencies Joint Power Ins. Auth.*, 34 Cal. 4th 441, 447 (2004) (stating that, even if a claim were timely made, a complaint is still "'vulnerable . . . if it alleges a factual basis for recovery which is not fairly reflected in the written claim'"); *see also Stevenson v. San Francisco Hous. Auth.*, 24 Cal. App. 4th 269, 278 (1994) (examining whether allegations made in the complaint were "based on a different set of facts from those set out in the claim"; indicating that there is a "fatal variance between the claim and the complaint" where there is a "'complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim'").

8

Accordingly, the Court dismisses with prejudice the California constitutional claim.

3. Summary

**In sum, the Court finds that the only part of Count X that survives the § 1915(e)(2) review is part of the § 1983 claim as pled against Judge Clark.** This ruling, of course, does not bar Judge Clark from moving to dismiss the Count X claim pursuant to Federal Rule of Civil Procedure 12(b)(6) whether, *e.g.*, on judicial immunity or other grounds.

D. Count XVII

As noted above, the Court strikes all amendments to Count XVII that were not permitted by the Court's prior order. Thus, at this juncture, Count XVII consists of an unlawful interrogation claim brought by Mr. Hiramanek against (1) Judge Clark, Mr. Yamasaki, Judge Loftus, and the County and (2) pursuant to 42 U.S.C. §§ 1983 and 1988 (the Fourth, Sixth, and Fourteenth Amendments).

1. Judge Clark

Similar to above, the Court notes that, for some of the alleged misconduct, there are insufficient factual allegations to support Mr. Hiramanek's claim that the misconduct was directed by Judge Clark. For example, for the incident that took place on June 29, 2012, Mr. Hiramanek largely speculates that Judge Clark was the driving force behind his detention and interrogation. *See* SAC ¶ 153 *et seq.* The mere fact that Judge Clark walked to a courthouse along with the deputies who ultimately detained and interrogated him does not give rise to a plausible inference, as required under *Twombly* and *Iqbal*, that Judge Clark ordered the detention and interrogation. Also, Mr. Hiramanek has failed to make any factual allegations supporting his claim that, *e.g.*, Judge Clark called Judge Arand or vice-versa to facilitate the detention and interrogation.

That being said, Mr. Hiramanek has made factual allegations to support his claim that Judge Clark ordered deputies to act on other occasions, *e.g.*, on June 11, 2012, and January 15, 2013. *See, e.g.*, SAC ¶ 143 (alleging that Deputy McChristian told Mr. Hiramanek that Judge Clark "was behind the criminal persecution"); SAC ¶ 161 (alleging that Deputy Plett "confirmed that he was following [Judge] CLARK's directions").

1    Accordingly, the Court concludes that Mr. Hiramanek has adequately stated – at least in part
2    – a claim against Judge Clark for purposes of § 1915(e)(2) review.

### 2. Mr. Yamasaki

Like the Count X claim against Mr. Yamasaki, the Count XVII claim against Mr. Yamasaki is based on a supervisory liability theory.  And like the Count X claim, the Count XVII claim is deficient because the mere fact that Mr. Yamasaki was the Court or Chief Executive Officer, *see* SAC ¶ 9, does not in and of itself establish that he was Judge Clark's supervisor.  Also, even if Mr. Yamasaki was the final policymaker for the Superior Court, *see* SAC ¶ 14, that is not enough to establish that he was Judge Clark's supervisor as to the alleged conduct in question.

Furthermore, even if Mr. Yamasaki was in fact Judge Clark's supervisor, Mr. Hiramanek never alleges in the pleading – with one exception – that he made a specific complaint to Mr. Yamasaki that Judge Clark was ordering deputies in the courthouse to conduct unlawful detentions and interrogations.  As to the one incident identified by Mr. Hiramanek where he did complain to Mr. Yamasaki (*i.e.*, the June 11, 2012, incident), the complaint failed to specify that the deputies subjected him to questions *during a detention*.  *See* SAC ¶ 166.  An interrogation would only have been potentially problematic if it had taken place during a detention.  In short, there is no allegation Mr. Yamasaki had notice of the wrongful conduct, and thus there is no supervisory liability under § 1983.  *See Starr*, 652 F.3d at 1207-08.

The Court therefore dismisses the claim against Mr. Yamasaki with prejudice.

### 3. Judge Loftus

As above, Mr. Hiramanek's claim against Judge Loftus seems to be predicated on supervisory liability but nothing in the amended complaint indicates that Judge Loftus was necessarily Judge Clark's supervisor.  And even if Judge Loftus was in fact Judge Clark's supervisor (*e.g.*, because he was the presiding judge of the court), there are no nonconclusory allegations in the amended complaint[3] that Mr. Hiramanek specifically informed Judge Loftus that Judge Clark was

---

[3] Mr. Hiramanek makes at best conclusory allegations.  *See, e.g.*, SAC ¶ 166 (alleging that Mr. Hiramanek complained to, *inter alia*, Judge Loftus but the specific complaint discussed concerns a complaint to Mr. Yamasaki only).

ordering deputies in the courthouse to conduct unlawful detentions and interrogations. Again, absent knowledge, there is no supervisory liability under § 1983.

The Court therefore dismisses with prejudice the claim against Judge Loftus.

### 4. County.

The analysis above with respect to Count X is largely applicable here as well. Accordingly, the Court dismisses with prejudice the Count XVII claim against the County.

### 5. Summary

**In sum, the Court finds that the only part of Count XVII that survives the § 1915(e)(2) review is part of the § 1983 claim as pled against Judge Clark.** This ruling, of course, does not bar Judge Clark from moving to dismiss the Count XVII claim pursuant to Rule 12(b)(6) whether, *e.g.*, on judicial immunity or other grounds.

## E. Count XIX

As stated above, Mr. Hiramanek did not have leave of the Court to include a new claim in the amended complaint. Accordingly, this claim is dismissed without prejudice.

## II. CONCLUSION

For the foregoing reasons, the Court finds that only some of Plaintiffs' amendments are within the scope permitted by the Court's prior order and, as to those amendments, only the following claims have survived § 1915(e)(2) review, namely:

(1) A disability discrimination claim brought by Ms. Hiramanek against the Superior Court pursuant to the ADA and California Civil Code § 51 only.

(2) An unlawful search and seizure claim brought by Mr. Hiramanek against Judge Clark pursuant to § 1983 (First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments).

(3) An unlawful interrogation claim brought by Mr. Hiramanek against Judge Clark pursuant to § 1983 (Fourth, Sixth, and Fourteenth Amendments).

**The Court orders the U.S. Marshal to serve the following documents on the Superior Court and Judge Clark: the original complaint (Docket No. 1), the Court's order granting Plaintiffs' in forma pauperis application (Docket No. 19), the Court's order denying Plaintiffs'**

motion for reconsideration (Docket No. 36), the second amended complaint (Docket No. 37), and this order.

Per the Clerk's notice of August 27, 2013, there shall be a case management conference in this case on November 21, 2013, at 9:00 a.m.  A *joint* case management conference statement must be filed by November 14, 2013.

Plaintiffs are not to file any motion, including a motion for leave to file an amended complaint, until *after* the Superior Court and Judge Clark have made an appearance in this case and the case management conference is held on November 21, 2013.

IT IS SO ORDERED.

Dated:  September 3, 2013

_____
EDWARD M. CHEN
United States District Judge