1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                         NORTHERN DISTRICT OF CALIFORNIA

7

8    ADIL HIRAMANEK, *et al.*,                     No. C-13-0228 EMC

9            Plaintiffs,

10                                                 **ORDER GRANTING IN PART AND**
                                                   **DENYING IN PART DEFENDANTS'**
     v.                                            **MOTION TO DISMISS**

11   L. MICHAEL CLARK, *et al.*,
                                                   **(Docket No. 51)**
12           Defendants.
     _____/

13

14

15          Plaintiffs Roda and Adil Hiramanek, mother and son, initially filed suit against various

16   defendants affiliated with the Santa Clara Superior Court, alleging a violation of their civil rights.

17   Because the Hiramaneks asked for leave to proceed in forma pauperis, the Court subjected their

18   original complaint and then their "second" amended complaint (SAC) to a 28 U.S.C. § 1915(e)

19   review.[1]  In an order dated September 3, 2013, the Court concluded that only certain claims as pled

20   in the SAC survived § 1915(e) review.  The Court then ordered the SAC as so limited to be served

21   on the Superior Court and Judge Clark (collectively, "Defendants").  Subsequently, Defendants filed

22   a motion to dismiss, which is currently pending before the Court.  Defendants request dismissal

23   pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

24

25

26

27   _____

28          [1] Technically, the SAC is the Hiramanek's *first* amended complaint.  However, it has been
     captioned the SAC by Hiramaneks, and therefore the Court refers to the SAC in this order.

1    Having considered the parties' briefs, as well as the oral argument presented at the hearing

2  on the motion and the supplemental briefs,[2] the Court hereby **GRANTS** in part and **DENIES** in part

3  the motion to dismiss.[3]

## I.   FACTUAL & PROCEDURAL BACKGROUND

5    After the Court's § 1915(e) review, there are only three potentially viable claims as pled in

6  the SAC.

7  (1)    A claim for disability discrimination and/or retaliation brought by Ms. Hiramanek against the

8    Superior Court.  This claim has been brought pursuant to the Americans with Disabilities Act

9    ("ADA") and California Civil Code § 51.[4]

10  (2)    An unlawful search and seizure claim brought by Mr. Hiramanek against Judge Clark

11    pursuant to 42 U.S.C. § 1983 (First, Fourth, Fifth, Sixth, Eighth, and Fourteenth

12    Amendments).

13  (3)    An unlawful interrogation claim brought by Mr. Hiramanek against Judge Clark pursuant to

14    § 1983 (Fourth, Sixth, and Fourteenth Amendments).

15  A.    Ms. Hiramanek's Disability Discrimination/Retaliation Claim

16    In her claim for disability discrimination and/or retaliation brought pursuant to the ADA/§

17  51, Ms. Hiramanek alleges as follows.

18

19  ───────────────

20    [2] The Court strikes all pages of Plaintiffs' supplemental brief, *see* Docket No. 71 (Pls.' Supp. Br.) except for those pages related to the ADA issue (related to Ms. Ku) for which the Court requested supplemental briefing.  The bulk of Plaintiffs' supplemental brief concerns Mr.
21  Hiramanek's § 1983 claims for which the Court did not request any supplemental briefing.

22    [3] The Court strikes Plaintiffs' objection to Defendants' reply brief.  *See* Docket No. 59 (objection).  Civil Local Rule 7-3(d) permits only an objection to reply *evidence* and Defendants did
23  not submit any evidence in support of their reply brief.

24    [4] Plaintiffs have indicated in other papers that, at the very least, they will want to add a new defendant to this claim – *i.e.*, Georgia Ku, who is purportedly the ADA coordinator for the Superior
25  Court.  *See* SAC ¶ 10; *see also Duvall v. County of Kitsap*, 260 F.3d 1124, 1134-35 (9th Cir. 2001) (concluding that there was at least an issue of material fact as to whether ADA coordinator for state
26  court was "acting in an administrative capacity rather than quasi-judicial capacity").  However, for a Title II ADA claim, there can be no individual liability.  *See Holcomb v. Ramar*, No. 1:13-CV-1102
27  AWI SKO, 2013 U.S. Dist. LEXIS 157833, at *16-17 (E.D. Cal. Nov. 4, 2013) (citing cases where "courts have held that there is no individual capacity liability under [42 U.S.C.] § 12132").
28  Therefore, Ms. Ku could not be sued in her individual capacity for a violation of Title II.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

Ms. Hiramanek is 83 years old.  She suffers from various physical impairments – *e.g.*, "organs, respiratory, cardiovascular, neurological, hearing impairment, musculoskeletal, bowel, digestive, vision."  SAC ¶ 18.  She also suffers from "age related mental and psychological disorder[s]."  SAC ¶ 18.  Because of her physical impairments, she uses a wheelchair and externally assisted oxygen.  *See* SAC ¶ 19.  The latter in particular has affected her ability to travel.  *See* SAC ¶ 20.

Ms. Hiramanek is involved in various lawsuits in state court – both family law cases and civil cases (and both as a plaintiff and defendant).  *See, e.g.*, SAC ¶¶ 22-26, 37-38.  Ms. Hiramanek has asked for accommodations because of her disabilities in these lawsuits.  Accommodations sought have included requests for a hearing aid and language interpreter as well as requests for a telephonic appearance.[5]  *See, e.g.*, SAC ¶¶ 27-28.  Ms. Hiramanek has been denied these accommodations.  *See, e.g.*, SAC ¶¶ 30, 57.  Furthermore, on one occasion, Ms. Hiramanek was given the accommodation of a telephonic appearance but then the "Court Call" connection was "arbitrarily unplugged/disconnected" which effectively deprived her of the ability to participate in the hearing.  SAC ¶ 39.  On another occasion, Ms. Hiramanek was allowed to make a telephonic appearance for a specific hearing but she had asked for leave to appear telephonically for all future court hearings, not just one, and therefore she was made to suffer the burden of filing repeated requests for accommodation.  *See* SAC ¶ 31.  Ms. Hiramanek indicates that she has been denied accommodations or been subjected to unfair treatment in part as retaliation for her complaining about ADA violations or judicial misconduct.  *See* SAC ¶ 42.  Ms. Hiramanek also intimates that she has suffered injury as a result of the actions by the Superior Court or its representatives because she has not been able to participate fully in hearings; because, on one or more occasions, she has lost property as a result of not being able to participate fully; and because she has been subjected to adverse judicial rulings (not limited to adverse decisions on accommodations), either as a result of not being able to participate fully or as a result of retaliation.  *See, e.g.*, SAC ¶¶ 42, 57.

_____

[5] It is not clear how a language interpreter (as opposed to a hearing aid) could be needed because of a person's disability.  However, as this point has not been raised by Defendants, the Court does not address it here.

United States District Court

For the Northern District of California

As relief, Ms. Hiramanek seeks, *inter alia*,

- a declaration that the Superior Court violated the ADA;

- an injunction barring "further interference or retaliation";

- an injunction requiring the Superior Court to implement a policy under which a person seeking an accommodation need only make one request for accommodation (rather than repeated requests for the same accommodation); and

- money damages, including actual damages and statutory damages as well as punitive damages.

*See* SAC ¶ 62.

B.     Mr. Hiramanek's § 1983 Claims

As noted above, Mr. Hiramanek has alleged two § 1983 claims – one for unlawful search and seizure and one for unlawful interrogation.

As limited by the Court's § 1915(e) review, Mr. Hiramanek's claims for unlawful search, seizure, or interrogation are based on, *e.g.*, events taking place in June 2012 and January 2013.  For instance, Mr. Hiramanek claims that, on June 11, 2012, he was leaving for a lunch break in a family court proceeding when several deputies detained him and confined him a conference room where he was interrogated "for a considerable period of time."  SAC ¶ 144.  According to Mr. Hiramanek, one of the deputies admitted to him that Judge Clark was behind this "criminal persecution."  SAC ¶ 143.  Mr. Hiramanek also asserts that, on January 14, 2013, he and his property successfully cleared the x-ray screening at the security entrance to the courthouse but, in spite of this fact, he was still subjected to a frisk and patdown and his property subject to a detailed hand search, all pursuant to the direction of Judge Clark as one of the deputies expressly informed Mr. Hiramanek.  *See* SAC ¶¶ 66-71.  Mr. Hiramanek further asserts that, on January 15, 2013, he went to the courthouse for a "routine drop off" when a deputy forcibly took him into one of the court departments and kept him under confinement and monitoring for the whole morning session.  SAC ¶ 75.  The deputy also took Mr. Hiramanek's cell phone and deleted information from it.  *See* SAC ¶ 76.  According to Mr. Hiramanek, the deputy confirmed that he was acting at Judge Clark's directions.  *See* SAC ¶ 161.

As relief for the unlawful conduct, Mr. Hiramanek seeks, *inter alia*,

1   •   compensatory damages (*e.g.*, for "great pain of body and mental anguish [and] property

2   damage"), SAC ¶ 121, and punitive damages, *see* SAC ¶ 122; *see also* SAC at 50-52 (prayer

3   for relief – monetary relief);

4   •   "equitable and injunctive relief to enjoin violating DEFENDANTS from their ongoing act[s]

5   implicated by this claim," SAC ¶ 124; *see also* SAC at 52-53; and

6   •   a declaration that "defendants['] wrongful acts constitute 'unlawful conduct.'" SAC ¶ 128;

7   *see also* SAC at 52-53.

## II.   DISCUSSION

### A.   Legal Standard

Defendants' motion is made pursuant to both Rule 12(b)(1) and Rule 12(b)(6).

Rule 12(b)(1) allows for dismissal based on lack of subject matter jurisdiction.  A motion to dismiss on the basis of subject matter jurisdiction can be either a facial attack or a factual one. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  Here, Defendants make a facial attack.  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Rule 12(b)(6) allows for dismissal based on a failure to state a claim for relief.  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949.

United States District Court

For the Northern District of California

B.      Ms. Hiramanek's Disability Discrimination/Retaliation Claim[6]

As limited by the Court, Ms. Hiramanek's discrimination/retaliation claim is pursuant to the ADA and California Civil Code § 51.  The ADA provides that, "[s]ubject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity."  42 U.S.C. § 12132.  It also provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act."  *Id.* § 12203(a).  As for California Civil Code § 51, it provides that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101-336) shall also constitute a violation of this section."  Cal. Civ. Code § 51(f).

The Superior Court moves for a dismissal of the ADA/§ 51 claim on several grounds: (1) because Ms. Hiramanek "alleges no facts demonstrating that she was excluded from participation in or denied the benefits of the Superior Court's services or otherwise discriminated against"; (2) because Ms. Hiramanek "does not allege any harm suffered as a result of any denial of an alleged accommodation request" and further does not allege "a sufficient fear of 'immediate and substantial injury'" to justify any injunctive relief; (3) because the Superior Court's alleged liability rests on respondeat superior liability but "[t]here can be no respondeat superior liability where the persons alleged to have violated the ADA are immune from damages"; (4) because the claim is barred by the *Rooker-Feldman* doctrine; (5) because, to the extent Ms. Hiramanek seeks a declaration that her rights were violated, "the Declaratory Judgment Act does not include a claim meant 'solely to adjudicate past conduct'"; and (6) because, to the extent Ms. Hiramanek seeks damages under § 51, she has failed to allege compliance with the California Tort Claims Act ("CTCA").  Mot. at 4-6. Each of these arguments is addressed below.

---

[6] As the Court stated at the hearing, Mr. Hiramanek is not authorized to represent his mother because he is not an attorney.  The Court gave Mr. Hiramanek leave to speak at the hearing with respect to his mother's claim solely in an amicus capacity.

6

**United States District Court**
For the Northern District of California

1.  <u>Discrimination</u>

According to the Superior Court, Ms. Hiramanek "alleges no facts demonstrating that she was excluded from participation in or denied the benefits of the Superior Court's services or otherwise discriminated against." Mot. at 4. The Court rejects this argument for two reasons.

First, the Superior Court fails to take into account that Ms. Hiramanek has asserted not only *discrimination* on the basis of disability but also *retaliation* based on, *e.g.*, her complaints about ADA violations. She has alleged facts to support her claim of retaliation – *i.e.*, that after she complained about ADA violations, she was "'blacklisted' by Defendant COURT, both in treatment [regarding] access to COURT [presumably, further denials of accommodations], and consistent adverse judicial rulings." SAC ¶ 42 (emphasis omitted).

Second, even for the "pure" discrimination claim, Ms. Hiramanek has alleged facts that she was deprived of the benefits of the services of the Superior Court. For example, Ms. Hiramanek alleges that, on one occasion, after she was told by the Superior Court that she could participate in a hearing by telephone pursuant to California Rule of Court 3.670, she followed those directions but she was still denied a telephonic appearance. *See* SAC ¶¶ 29-30. Furthermore, the Superior Court has focused only on the issue of telephonic appearances. There are allegations in the SAC about other kinds of accommodations sought by Ms. Hiramanek and denied by the Superior Court – *e.g.*, a hearing aid.

2.  <u>Harm</u>

Next, the Superior Court argues for dismissal of the ADA/§ 51 claim on the ground that Ms. Hiramanek has failed to allege that she actually suffered any harm as a result of its actions or that she will likely suffer harm in the future (which would justify the request for injunctive relief). The Court rejects this argument as well.

The Superior Court correctly notes that injury or harm is a prerequisite if only because of Article III's standing requirement.[7] *See Washington Envtl. Council v. Bellon*, 732 F.3d 1131, ---

---

[7] The Superior Court also contends that harm is necessary in order to have a viable ADA/§ 51 claim. In support of this argument, the Superior Court relies on *Memmer v. Marin County Courts*, 169 F.3d 630, 633 (9th Cir. 1999). In *Memmer*, the plaintiff argued that the defendant court's failure to provide accommodations during pretrial proceedings constituted discrimination in

**United States District Court**

For the Northern District of California

1   (9th Cir. 2013) (stating that, "[f]or Article III standing, a plaintiff must satisfy three 'irreducible

2   constitutional minimum' requirements: (1) he or she suffered an injury that is concrete,

3   particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct;

4   and (3) the injury is likely to be redressed by a favorable court decision"). But as indicated above,

5   Ms. Hiramanek has alleged enough to establish past harm. She indicates in the SAC that she has

6   suffered injury as a result of the actions by the Superior Court or its representatives because she has

7   not been able to participate fully in hearings; because, on one or more occasions, she has lost

8   property as a result of not being able to participate fully; and because she has been subjected to

9   adverse judicial rulings (not limited to adverse decisions on accommodations), either as a result of

10  not being able to participate fully or as a result of retaliation. *See, e.g.*, SAC ¶¶ 42, 57. Contrary to

11  what the Superior Court argues, these allegations of injury meet the standard articulated by the Ninth

12  Circuit in *Memmer*. *See* note 5, *supra*.

13          Of course, the Superior Court also argues that Ms. Hiramanek has – at the very least – failed

14  to allege enough to establish the likelihood of future harm, such that she lacks standing to pursue

15  injunctive relief.

16                  To have standing to assert a claim for prospective injunctive relief, a
                    plaintiff must demonstrate "that [she] is realistically threatened by a
17                  repetition of [the violation]." [The Ninth Circuit has] "enumerated two
                    ways in which a plaintiff can demonstrate that such injury is likely to
18                  recur." "First, a plaintiff may show that the defendant had, at the time

_____

20  violation of the ADA. The Ninth Circuit noted that

21                  [t]he regulation governing reasonable accommodations, 28 C.F.R. §
                    35.130(b)(7), requires that accommodations be provided only "when
22                  the modifications are necessary to avoid discrimination on the basis of
                    disability." It is clear from the record . . . that [the plaintiff's] visual
23                  disability did not disadvantage her in any way during pre-trial
                    proceedings. In her request for accommodations, [the plaintiff] sought
24                  assistance with activities such as examining trial exhibits and reading
                    documents. None of the pre-trial hearings involved activities with
25                  which [the plaintiff] needed assistance. Because [the plaintiff] was not
                    disadvantaged in any way by her disability, it logically follows that no
26                  accommodations during the pre-trial stage were required.

27  *Id.* at 633. While Ms. Hiramanek has attacked the Superior Court's reliance on *Memmer*, *see* Opp'n
    at 5-6, her arguments are not persuasive. For example, Ms. Hiramanek focuses on the issue of
28  discrimination against the plaintiff *during trial*, but the excerpt above addresses the issue of
    discrimination against the plaintiff *during pretrial proceedings*.

of the injury, a written policy, and that the injury 'stems from' that policy." "Second, the plaintiff may demonstrate that the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.'"

*de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 997-98 (9th Cir. 2012).  At this juncture of the proceedings, Ms. Hiramanek has alleged enough facts to support standing because, in the SAC, there are allegations suggesting that there has been a pattern of denials of accommodations.  *See, e.g.*, SAC ¶ 26 (alleging denial of accommodations at "hearings throughout 2012-2013, including during an elder abuse assault trial in March 2012 and hearings on June 29, 2012, July 20, 2013 in civil case #1-10-CV-163310, and 2012-2013 hearings in case #1-09-FL-149682); *see also Howard v. City of Vallejo*, No. CIV. S-13-1439 LKK/KJN, 2013 U.S. Dist. LEXIS 161926, at *21 (E.D. Cal. Nov. 13, 2013) (stating that "plaintiffs' claim for injunctive relief must be resolved on an evidentiary record and not at the pleading stage").

       3.   <u>Immunity</u>

      The Superior Court argues that, even if there are adequate allegations to support the ADA/§ 51 claim, it is still entitled to dismissal because its alleged liability rests on respondeat superior liability and "[t]here can be no respondeat superior liability where the persons alleged to have violated the ADA are immune from damages."  Mot. at 5.  In support of this argument, the Superior Court cites *Phiffer v. Oregon*, No. CV-10-1120-SU, 2011 U.S. Dist. LEXIS 153350 (D. Or. Nov. 21, 2011), *adopted by* 2012 U.S. Dist. LEXIS 20628 (D. Or. Feb. 17, 2012).  There, the district court essentially found that, "under a respondeat superior theory, judicial and quasi-judicial immunity extends to the government employer."  *Id.* at *15.

      As a preliminary matter, the Court takes into account that the Superior Court's argument rests on the premise that the state employee(s) who allegedly violated the ADA does in fact have immunity.  In two prior orders, the Court found that, to the extent Ms. Hiramanek asserted in her original complaint that it was a *judge* who denied her requests for accommodation, that judge would be protected by judicial immunity.  *See* Docket No. 19 (Order at 7-8); Docket No. 36 (Order at 3-4).  But, as noted above, Ms. Hiramanek has indicated in her papers that Ms. Ku – who is not a judge – also denied requests for accommodation in her role as the Superior Court's ADA coordinator.

**United States District Court**
For the Northern District of California

1    According to Ms. Hiramanek, there should at the very least be a factual question as to whether Ms.

2    Ku would be protected by judicial immunity.  *See* note 2, *supra*; *Duvall*, 260 F.3d at 1134-35

3    (concluding that there was at least an issue of material fact as to whether ADA coordinator for state

4    court was "acting in an administrative capacity rather than quasi-judicial capacity").

5            To the extent the Court previously held that a *judge* has judicial immunity, the Court agrees

6    with Defendants that that immunity should extend to the Superior Court.  "The primary policy of

7    extending immunity to judges . . . is to ensure independent and disinterested judicial . . .

8    decisionmaking."  *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986).  This policy which

9    requires immunity for judges "also requires immunity for [the Superior Court] for acts of judicial

10   and quasi-judicial officers in the performance of the duties of their respective offices; otherwise, the

11   objectives sought by immunity to the individual officers would be seriously impaired or destroyed."

12   *Coyle v. Baker*, No. CV-12-0601-LRS, 2013 U.S. Dist. LEXIS 102350, at *2 (E.D. Wash. July 22,

13   2013); *see also Christoffersen v. State*, 242 P.3d 1032, 1036 & n.26 (Alaska 2010) (supporting the

14   view that "an employee's quasi-judicial immunity bars any vicarious liability claims brought against

15   the employer"; taking note of other courts holding such and adding that "[t]he policy considerations

16   that support extending absolute quasi-judicial immunity to court-appointed investigators acting

17   within the scope and capacity of their appointment also support extending that same immunity to

18   their principal, here, the State" – "[t]o conclude otherwise would merely shift the threat of liability

19   from the agent to the principal and would stifle the 'disinterested objective opinion that the court

20   seeks'").

21           However, the immunity extended to the Superior Court is only immunity from *damages*, and

22   not immunity from prospective injunctive relief.  In contrast to 42 U.S.C. § 1983, there is no

23   provision in the ADA that bars injunctive relief with respect to judicial officers.  *See* 42 U.S.C. §

24   1983 (as amended in 1996, providing that "in any action brought against a judicial officer for an act

25   or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

26   declaratory decree was violated or declaratory relief was unavailable").  Furthermore, in *Pulliam v.*

27   *Allen*, 466 U.S. 522 (1984), the Supreme Court explained why the absence of immunity with respect

28   to injunctive relief would not likely have "a chilling effect on judicial independence."  *Id.*

United States District Court

For the Northern District of California

> For the most part, injunctive relief against a judge raises concerns different from those addressed by the protection of judges from damages awards. The limitations already imposed by the requirements for obtaining equitable relief against any defendant – a showing of an inadequate remedy at law and of a serious risk of irreparable harm – severely curtail the risk that judges will be harassed and their independence compromised by the threat of having to defend themselves suits by disgruntled litigants.

*Id.* at 537-38. In short, the chilling effect of potential retrospective liability for monetary damages is not extant where only prospective equitable relief is available. Accordingly, the Court concludes that the Superior Court has immunity with respect to any denial of accommodations by a judge, but that immunity covers only damages and not prospective injunctive relief.

As for Ms. Ku, to the extent she made any denial of accommodations, it is not clear at this juncture whether she was acting in a quasi-judicial capacity,[8] and therefore, the Court cannot say at this point in the proceedings that she is entitled to quasi-judicial immunity, which would then extend to the Superior Court. However, even if she were to have such immunity, that would only be immunity from damages, and not from prospective injunctive relief, as discussed above.[9]

---

[8] In its supplemental brief, the Superior Court fails to explain how its position is justified in light of *Duvall*, where the Ninth Circuit found that it was a factual question as to whether the ADA coordinator could claim the protection of quasi-judicial immunity. *See* Docket No. 70 (Defs.' Supp. Br. at 3) (relying on *Duvall* dissent rather than majority). The Court acknowledges that there were unique facts in *Duvall* which suggested that quasi-judicial immunity arguably should not apply and such facts or analogous facts may well be lacking in the instant case. *See Duvall*, 260 F.3d at 1134 (noting that some of ADA coordinator's "deposition testimony strongly suggests that her decision not to provide videotext display was administrative in nature" – *i.e.*, based on deposition testimony, "it appears that when a statute requires, or perhaps even authorizes, the provision of a particular form of assistive device to a hearing-impaired individual, Botta has the authority to make the necessary arrangements therefor, as an administrative matter.") However, at this point in the proceedings, the Court cannot say that such facts cannot be found in the instant case. The Court notes that judicial or quasi-judicial immunity is an affirmative defense and, therefore, Ms. Hiramanek's pleading did not have to contain any allegations to show why such immunity is not applicable. *See, e.g.*, *Belluomini v. CitiGroup, Inc.*, No. CV 13-01743 CRB, 2013 U.S. Dist. LEXIS 103882, at *9 n.3 (N.D. Cal. July 24, 2013) (noting that "[f]ederal courts have repeatedly held that a plaintiff is not required to plead facts in his complaint in order to avoid potential affirmative defenses"); *cf. Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (stating that "the assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense").

[9] As noted above, Ms. Ku could not be sued in her individual capacity for a violation of Title II. *See* note 4, *supra*. The only question here is whether any immunity of Ms. Ku could extend to the Superior Court.

4.    *Rooker-Feldman*[10]

The Superior Court also argues that *Rooker-Feldman* is a bar to Ms. Hiramanek's ADA/§ 51 claim.  Broadly speaking, under the *Rooker-Feldman* doctrine, a district court is barred, in effect, from exercising appellate jurisdiction over a state court judgment as that jurisdiction has been reserved to the Supreme Court (pursuant to 28 U.S.C. § 1257).  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005).  The Ninth Circuit has described the doctrine as follows:

> The *Rooker-Feldman* doctrine forbids a losing party in state court from filing suit in federal court complaining of an injury caused by a state court judgment, and seeking federal court review and rejection of that judgment.  To determine whether the *Rooker-Feldman* doctrine is applicable, a district court first must determine whether the action contains a forbidden de facto appeal of a state court decision.  A de facto appeal exists when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." . . . .
>
> [Second,] [i]f "a federal plaintiff seeks to bring a forbidden de facto appeal, . . . that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought."

*Bell v. City of Boise*, 709 F.3d 890, --- (9th Cir. 2013).

As a preliminary matter, the Court takes note that, arguably, *Rooker-Feldman* should have no application here to the extent the denials of accommodations were not made by a state court judge but rather by Ms. Ku, who is purportedly the ADA coordinator for the Superior Court.

But even if *Rooker-Feldman* could apply to both the denials by a state court judge and Ms. Ku (*i.e.*, because she acted in a quasi-judicial capacity), the Superior Court still would not prevail.[11]

---

[10] In the reply brief, the Superior Court also makes a reference to *Younger* abstention "[t]o the extent Plaintiff claims the state court proceedings are ongoing."  Reply at 2 n.3.  However, the Court shall not entertain the *Younger* abstention argument because it was raised for the first time in the reply and thus has never been the subject of full briefing.  This ruling is without prejudice to a separately noticed motion seeking abstention under *Younger*.

[11] The Court also assumes that *Rooker-Feldman* can apply to interlocutory orders and not final judgments.  In a pre-*Exxon Mobil* decision, the Ninth Circuit held that *Rooker-Feldman* can apply to an interlocutory order (*i.e.*, no final judgment), *see Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) (agreeing with the D.C. Circuit that "'[w]e cannot imagine how one could reconcile *Feldman*'s reasoning, based as it is on allowing state courts to arrive at decisions free from collateral federal attack, with the idea that the district court would be

12

**United States District Court**
For the Northern District of California

1    *Rooker-Feldman* would not be a bar because the Superior Court is immune from damages (assuming

2    that Ms. Ku acted in a quasi-judicial capacity), which makes Ms. Hiramanek's request for a

3    declaration that her rights have been violated in the past effectively moot.  Because the request for

4    declaratory relief is moot, Ms. Hiramanek is no longer asking the Court to "undo" any decision,

5    whether rendered by a state court judge or Ms. Ku.  The only relief she is pursuing is prospective

6    injunctive relief.  There is no indication that a state court judge or Ms. Ku has barred Ms. Hiramanek

7    from seeking prospective injunctive relief (with respect to disability accommodations), and

8    therefore, in asking this Court to award her prospective injunctive relief, Ms. Hiramanek is not

9    seeking relief from an order by a state court judge or Ms. Ku.  Accordingly, the concerns underlying

10   *Rooker-Feldman* are not implicated.

11        In any event, the Court notes that the Superior Court's *Rooker-Feldman* argument is not

12   really based on *Rooker-Feldman* (*i.e.*, that appeal should have taken to the Supreme Court rather

13   than this Court) but rather seems to be more in the nature of an exhaustion argument – *i.e.*, that Ms.

14   Hiramanek should have pursued the denial of her request for accommodations via a writ or appeal in

15   the state court system.  *See* Reply at 3 (arguing that Ms. Hiramanek "has a means to obtain review of

16   those determinations: by seeking writ or appellate review through the state court system"; citing Cal.

17   R. of Ct. 1.100(g)).  Neither party has fully briefed the issue of exhaustion and therefore the Court

18

---

19   free to review [the state court decision] so long as the decision was interlocutory'").  In two
20   unpublished cases issued after *Exxon Mobil*, the Ninth Circuit relied on *Doe* for that very
     proposition.  *See Vacation Vill., Inc. v. Clark County*, No. 05-16173, 2007 U.S. App. LEXIS 17459,
21   at *12 (9th Cir. July 23, 2007) (stating that "[s]tate court decisions subject to the *Rooker-Feldman*
     doctrine include not only final judgments, but also interlocutory orders"); *Sanai v. Sanai*, 141 Fed.
22   Appx. 677, 678 (9th Cir. 2005) (holding that *Rooker-Feldman* barred appellants' challenge to the
     state court's disqualification of counsel).  Furthermore, in *Federacion de Maestros de P.R. v. Junta*
23   *de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17 (1st Cir. 2005), the First Circuit suggested
     that there could be scenarios where *Rooker-Feldman* could apply to bar a challenge to an
24   interlocutory order.  *See id.* at 25 (indicating that *Rooker-Feldman* should apply "if the state court
     proceedings have finally resolved all the federal questions in the litigation, but state law or purely
25   factual questions (whether great or small) remain to be litigated"; thus concluding that *Rooker-*
     *Feldman* applied to bar a party's challenge to a state supreme court's interlocutory order which
26   found that there was jurisdiction over the case (*i.e.*, no federal preemption)).  The Ninth Circuit
     seems to have endorsed the First Circuit's approach in *Federacion*.  *See Mothershed v. Justices of*
27   *the Supreme Court*, 410 F.3d 602 (9th Cir. 2005), *reprinted as amended at* 2005 U.S. App. LEXIS
     14812, at *10 n.3 (9th Cir. 2005) (agreeing with First Circuit that "[p]roceedings end for *Rooker-*
28   *Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks
     to relitigate in a federal forum, even if other issues remain pending at the state level").

United States District Court

For the Northern District of California

1    does not entertain the issue at this point in the proceedings.  This ruling is without prejudice to the

2    Superior Court raising in a noticed motion the exhaustion question.

3         5.    Declaratory Relief

4         The Superior Court argues next that, to the extent Ms. Hiramanek seeks a declaration that it

5    violated the ADA, the claim should be dismissed because the Declaratory Judgment Act "does not

6    include a claim meant 'solely to adjudicate past conduct.'" Mot. at 6; *see also Nat'l Audubon Soc'y*

7    *v. Davis*, 307 F.3d 835, 847-48 & n.5 (9th Cir. 2002) (noting that a declaratory relief action that

8    seeks retrospective relief will often be duplicative of a claim for damages).  To the extent the Court

9    has dismissed the damages claim against the Superior Court (*i.e.*, based on judicial immunity), the

10   Court agrees that the request for declaratory relief is essentially moot.  However, as noted above, at

11   this point, it is not clear whether Ms. Ku is entitled to quasi-judicial immunity for damages, and

12   therefore the claim for declaratory relief is not rendered moot in its entirety.

13        6.    Damages

14        Finally, the Superior Court asks for dismissal of the § 51 claim because, in the SAC, Ms.

15   Hiramanek asks for damages but has failed to allege compliance with CTCA, which requires

16   presentment of a claim for damages to the public entity at issue prior to filing suit.  *See* Cal. Gov't

17   Code § 905 (requiring presentation of a claim against a local public entity); *id.* § 905.7 (requiring

18   claim presentation where claim is against a judicial branch entity); *id.* § 945.4 (providing that "no

19   suit for money or damages may be brought against a public entity on a cause of action for which a

20   claim is required to be presented . . . until a written claim therefor has been presented to the public

21   entity").

22        To the extent Ms. Hiramanek claims that she has adequately pled compliance with the

23   CTCA's claim presentation requirement, that argument is without merit.  In her opposition, Ms.

24   Hiramanek cites four paragraphs from the SAC to support her claim that she properly alleged

25   compliance.  *See* Opp'n at 11.  But none of those paragraphs is availing.

26   •   SAC ¶ 28.  In this paragraph, Ms. Hiramanek refers to a complaint that she made to the

27       Superior Court on February 22, 2013.  But this complaint did not comply with the CTCA for

28       several reasons.  First, based on what is alleged in the SAC, there was nothing in the

complaint to indicate that Ms. Hiramanek was (1) making a claim for money damages specifically and (2) would bring suit if her claim were not satisfied.  *See Gines v. San Diego Metropolitan Transit System*, No. 09cv2866 JM(POR), 2010 U.S. Dist. LEXIS 14167, at *11 (S.D. Cal. Feb. 18, 2010) (holding that a complaint form and letter submitted were inadequate because the documents "did not request monetary relief and failed to put [the local public entity] on notice that there was in fact (1) any claim to settle, (2) any claim that could impact [its] fiscal planning; and (3) any claim requiring [entity] action to avoid similar liability in the future"); *Green v. State Ctr. Comm. Coll. Dist.,* 34 Cal. App. 4th 1348, 1358 (1995) (stating that claim must "make it readily discernible . . . that the intended purpose [of the communication] is to convey the assertion of a compensable claim against the [public] entity which, if not otherwise satisfied, will result in litigation").  Second, the complaint was not directed to the appropriate person.  Ms. Hiramanek sent the complaint to the Superior Court's presiding judge but the CTCA requires that notice be made to the court executive officer.  *See* Cal. Gov't Code § 915(c)(1) (requiring delivery or mailing to the court executive officer, if against a superior court or judge).

- SAC ¶ 41.  In this paragraph, Ms. Hiramanek asserts that she made a complaint about denial of accommodations in a correspondence to the Superior Court, dated July 2, 2013 (provided via e-mail and personal service).  But, as above, there is nothing to indicate that this complaint alerted the Superior Court to (1) a claim for money damages specifically and (2) a lawsuit if the claim were not satisfied.  Moreover, the complaint was directed to the presiding judge and not, as the CTCA requires, the court executive officer.

- SAC ¶ 103.  This paragraph states that, "[d]uring 2012-2013, pursuant to Government Code . . . § 915(c)[,] ADIL filed complaint(s) and a claim(s) to the Court Executive Officer, YAMASAKI, for all claims in the Complaint, *and* this SAC."  SAC ¶ 103 (emphasis in original).  As an initial matter, this paragraph is problematic because it states that Mr. Hiramanek made complaints, not Ms. Hiramanek.  Even if the Court were to liberally construe the paragraph as stating that Mr. Hiramanek made complaints on his mother's behalf, there is still nothing to indicate that those complaints made clear (1) that a claim for

United States District Court
For the Northern District of California

money damages was being presented and (2) that litigation would result if the claim were not satisfied.

• SAC ¶ 166.  This paragraph refers to a complaint by Mr. Hiramanek about allegedly wrongful conduct against him, and not his mother.

As for Ms. Hiramanek's assertion that the CTCA's claim presentation requirement should not even be applied in the first instance – *i.e.*, because she seeks primarily declaratory or injunctive relief and only "incidental money damages are sought," Opp'n at 12 – the Court does not find that argument persuasive.  It is true that "[t]he claims filing requirement remains applicable [only] to actions in which money damages are not incidental or ancillary to any specific relief that is also sought, but the primary purpose of the action."  *Gatto v. County of Sonoma*, 98 Cal. App. 4th 744, 762 (2002).  However, it is clear from the SAC that monetary damages are in fact one of the primary purposes of the action.  Although, in ¶ 62 of the SAC, Ms. Hiramanek does ask first for declaratory and injunctive relief and only thereafter for money damages, in the prayer for relief, she puts monetary relief before equitable, injunctive, and declaratory relief.  *See* SAC at 50-53.  Furthermore, even if the Court were to limit its consideration to ¶ 62 only, her claim for money damages cannot be characterized as ancillary because she seeks actual damages, statutory damages ($4,000 for each defendant), and even punitive damages.  *See* SAC ¶ 62(8), (10); *cf. Woodward v. Subia*, No. CIV S-07-498 JAM KJM P, 2008 U.S. Dist. LEXIS 85271, at *12-13 (E.D. Cal. Sept. 11, 2008) (stating that, "[w]hile [plaintiff's] initial prayers are for injunctive and declaratory relief, he seeks monetary sanctions beyond the replacement cost of the photographs if they cannot be returned or replaced[;] [m]oreover, he seeks punitive damages of $ 15,000 per defendant even if he recovers the property he alleges was taken; these damages cannot be deemed inconsequential to 'the effect of the declarations [he] seeks'").

Accordingly, the Court grants the motion to dismiss Ms. Hiramanek's § 51 claim based on failure to comply with the CTCA.  The dismissal is with prejudice.  Dismissal with prejudice is appropriate because Ms. Hiramanek was aware of the CTCA issue by virtue of the Court's prior order which dismissed her state constitutional claims (albeit not the § 51 claim) based on failure to

United States District Court

For the Northern District of California

1  comply with the CTCA.  *See* Docket No. 19 (Order at 9).  Yet she has failed to adequately allege

2  compliance with the CTCA.

3  C.    Mr. Hiramanek's § 1983 Claims

4          As noted above, Mr. Hiramanek has asserted § 1983 claims based on unlawful search or

5  seizure or unlawful interrogation.  Judge Clark has challenged those claims largely on two  grounds:

6  (1) that he is protected by judicial immunity; and (2) that Mr. Hirmanek has failed to state a claim

7  for relief.[12]  The Court addresses the issue of judicial immunity first because it is dispositive.

8          In conducting its § 1915(e) review of the SAC, the Court indicated that it was "arguably a

9  question of fact as to whether Judge Clark would have judicial immunity for his actions," and

10  therefore did not dismiss the § 1983 claims asserted by Mr. Hiramanek.  Docket No. 39 (Order at 5).

11  The Court specifically noted, however, that its ruling did not bar Judge Clark from raising, *inter*

12  *alia*, judicial immunity as a basis for a Rule 12 dismissal.  *See* Docket No. 39 (Order at 9).  Judge

13  Clark has now raised judicial immunity as a basis for dismissal under Rule 12.

14          Judicial immunity protects a judge from money damages for his or her judicial acts as

15  opposed to, *e.g.*, "the administrative, legislative, and executive functions that judges may on

16  occasion be assigned to perform."  *Duvall*, 260 F.3d at 1133.  The Ninth Circuit has

17  > identified the following factors as relevant to the determination of
18  > whether a particular act is judicial in nature: (1) the precise act is a
    > normal judicial function; (2) the events occurred in the judge's
    > chambers; (3) the controversy centered around a case then pending
19  > before the judge; and (4) the events at issue arose directly and
    > immediately out of a confrontation with the judge in his or her official
20  > capacity.

21

22

─────────────────

23          [12] In his opening brief, Judge Clark also made the arguments that (1) he is protected by
24  Eleventh Amendment immunity and that (2) he could not be sued in his official capacity under §
    1983 because that would ultimately be a suit against the state and a state is not a person under the
    statute.  *See* Mot. at 8; *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)
25  (stating "neither a State nor its officials acting in their official capacities are 'persons' under §
    1983").  It was not unreasonable for Judge Clark to make this argument since, in the SAC, Mr.
26  Hiramanek alleged that "[e]ach DEFENDANT is sued individually, jointly, severally, in individual
    (non-official) *and official capacity*."  SAC ¶ 11 (emphasis added).  However, in his opposition, Mr.
27  Hiramanek seems to give up any claim for official liability, stating that he is suing Judge Clark in his
    individual capacity only.  *See* Opp'n at 24 (stating that "Clark is sued in his *individual* capacity . . .
28  and not as a proxy for the state") (emphasis in original).

United States District Court

For the Northern District of California

1  *Id.*; *see also In re Complaint of Judicial Misconduct*, 366 F.3d 963, 965 (9th Cir. 2004).  Notably,

2  motive is generally *not* a consideration in evaluating whether an act is judicial or not.  *See, e.g.*,

3  *Forrester v. White*, 484 U.S. 219, 227 (1988) (stating that "acting to disbar an attorney as a sanction

4  for contempt of court, by invoking a power 'possessed by all courts which have authority to admit

5  attorneys to practice,' does not become less judicial by virtue of an allegation of malice or

6  corruption of motive"); *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (stating that judicial immunity "is

7  not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be

8  resolved without engaging in discovery and eventual trial").

9        Mr. Hiramanek's papers are problematic to the extent he suggests that the location of the

10  allegedly wrongful conduct dispositively establishes the acts as nonjudicial in nature.  The Court

11  previously rejected "Mr. Hiramanek's suggestion that the place where the alleged searches and

12  seizures took place dictates whether Judge Clark was engaging in a judicial or nonjudicial act."

13  Docket No. 39 (Order at 5 n.2).  Moreover, Mr. Hiramanek's attempt to draw a line between (1) acts

14  in chambers or the courtroom and (2) acts outside chambers or the courtroom *but still within the*

15  *courthouse* is strained.  While the *Duvall* court did state that a relevant factor in assessing whether

16  an act as judicial is whether the events occurred within chambers, this should hardly be construed as

17  a statement that acts outside of chambers but still within the courthouse are presumptively or even

18  likely to be nonjudicial in nature.

19        Ultimately, the critical *Duvall* factors in the instant case are (1) whether the precise act is a

20  normal judicial function and (2) whether the controversy centers around a case then pending before

21  the judge.  To the extent Mr. Hiramanek argues that a judge's acts taken to protect security in the

22  courthouse generally (as opposed to the courtroom specifically) are not judicial in nature, that

23  argument is not without some merit.  Nevertheless, if a judge were to take action to protect security

24  in the courthouse *because of a case then pending before the judge*, judicial immunity should still

25  apply.  In this regard, *Huminski v. Corsones*, 386 F.3d 116 (2d Cir. 2004), is instructive.[13]

26

27  _____

28        [13] Although the Court has stricken Plaintiffs' objection, it has taken into account their
criticism of *Huminski*.

United States District Court

For the Northern District of California

1    In *Huminski*, the defendant-judge participated in a decision to issue trespass notices to the

2    plaintiff which barred him from certain state court buildings and lands.  The Second Circuit held

3    that, to the extent the defendant-judge participated in the decision to issue the trespass notices, she

4    
> engaged in a judicial act because the general nature and function of
> her actions were substantially judicial.  *There was a nexus between her*

5    
> *actions – whether or not her actions were motivated by security and*
> *safety concerns – and [the plaintiff's] criminal case before her.*  [The

6    
> plaintiff's] letters, complaints, and protests regarding [the defendant-
> judge] stemmed directly from her decision to vacate his plea

7    
> agreement in his criminal case over which she presided.  And [her]
> actions regarding the decision the issue the trespass notices to [the

8    
> plaintiff] stemmed directly from [the plaintiff's] protests.  These
> actions by [the defendant-judge] "were clearly designed to address . . .

9    
> [the plaintiff's] conduct, and directly related to her role in adjudicating
> the case which engendered [the plaintiff's] conduct in the first place."

10   

11   
> It is immaterial, we think that [the defendant-judge's] actions
> occurred outside of a courtroom inasmuch as they were directed at

12   
> barring [the plaintiff] therefrom.  We thus agree with the Sixth Circuit:
> "In circumstances in which a judge reasonably perceives a threat to

13   
> himself or herself arising out of the judge's adjudicatory conduct, the
> judge's response, be it a letter to a prosecutor or a call to the

14   
> Marshall's office for security, is a judicial act within the scope of
> judicial immunity."

15   *Id.* at 140-41 (emphasis added); *see also Barrett v. Harrington*, 130 F.3d 246, 259 (6th Cir. 1997)

16   (stating that "the general function of Judge Harrington's conduct in writing to the prosecuting

17   authorities was to protect the integrity of the judicial decision-making process[;] clearly, there was a

18   direct relational nexus between Harrington's judicial decisions, [the plaintiff's] response in

19   'investigating' and threatening her, and Harrington's response in contacting the prosecuting

20   authorities"); *cf. Brookings*, 389 F.3d at 621-22 (stating that "[the Sixth] [C]ircuit has held that even

21   if the particular act is not a function normally performed by a judge, it may constitute a judicial act if

22   it relates to a general function normally performed by a judge"; here, where the defendant-judge

23   learned and reported to prosecuting authorities that the plaintiff had falsified information on his

24   application for a marriage license, "the general function of Judge Clunk's conduct in initiating

25   criminal proceedings against [the plaintiff] was to 'preserve the integrity of the judicial system'").

26   In his papers, Mr. Hiramanek seems to suggest that the acts taken by Judge Clark could not

27   relate to any pending case because the unlawful searches, seizures, and/or interrogations took place

28   on days outside of scheduled hearings.  *See* Opp'n at 16 (asserting that "the overly intrusive search

1    happened *repeatedly*, at areas *outside* the zone Clark frequented, and on days outside scheduled

2    hearing, for e.g. visit to assist similarly situated parties") (emphasis in original).  However, that is

3    not entirely clear from the allegations in the SAC.  Moreover, even if the acts took place on days

4    outside of scheduled hearings, *see, e.g.*, SAC ¶ 75 (alleging that one seizure took place on a day that

5    Mr. Hiramanek visited the courthouse "for a routine drop off"), that still does not mean that Judge

6    Clark's acts were not based on a pending case before him involving Mr. Hiramanek.  *Compare, e.g.*,

7    *Brookings v. Clunk*, 389 F.3d 614, 619 (6th Cir. 2004) (stating that, "in those instances where the

8    judge initiates proceedings based on his private interests *which are completely separate from the*

9    *cases before him brought independently by the parties*, the judge will likely not be protected by the

10   doctrine of judicial immunity") (emphasis added); *Harper v. Merckle*, 638 F.2d 848, 859 (5th Cir.

11   1981) (stating that court was making a narrow holding that only "when it is beyond reasonable

12   dispute that a judge has acted out of personal motivation and has used his judicial office as an

13   offensive weapon to vindicate personal objectives, and *it further appears certain that no party has*

14   *invoked the judicial machinery for any purpose at all*, then the judge's actions do not amount to

15   'judicial acts'")[14] (emphasis added).

16         In fact, based on the information presented to the Court, there is no indication that Judge

17   Clark's actions, as described by Mr. Hiramanek, could have been based on anything except the

18   pending case before him involving Mr. Hiramanek.  Mr. Hiramanek does not suggest, for example,

19   that he and Judge Clark had a dispute that pre-dated the state court proceedings over which Judge

20   Clark presided.  Because the defense of judicial immunity is essentially apparent on the face of the

21   SAC, a dismissal pursuant to Rule 12(b)(6) is proper.  *See Rivera v. Peri & Sons Farms, Inc.*, 735

22   F.3d 892, 902 (9th Cir. 2013) (noting that, ordinarily, a plaintiff need not plead on the subject of an

23   affirmative defense but adding that dismissal based on an affirmative defense is proper where the

24   defense is obvious on the face of the complaint).

---

27   [14] The italicized language above from *Harper* is echoed in Ninth Circuit law.  *See Duvall*,
     260 F.3d at 1133 (noting that, in determining whether an act is judicial, a court should consider,
28   *inter alia*, whether the events at issue arose directly and immediately out of  confrontation with the
     judge in his or her official capacity).

**United States District Court**
For the Northern District of California

1    Because the Court is dismissing the claims against Judge Clark based on judicial immunity,

2  it need not entertain Judge Clark's secondary argument that Mr. Hiramanek has failed to state a

3  claim for relief.

### III.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the motion to dismiss.

(1)    Ms. Hiramanek's ADA claim is dismissed in part.  To the extent the ADA claim is based on

a denial of accommodations made by a judge, the Superior Court has immunity from

damages but not immunity from prospective relief.  To the extent the ADA claim is based on

a denial of accommodations made by Ms. Ku, it is not yet clear whether Ms. Ku has quasi-

judicial immunity.  Any such immunity of Ms. Ku, however, would only preclude damages

being assessed against the Superior Court and not prospective relief.

(2)    Ms. Hiramanek's § 51 claim is dismissed with prejudice for failure to comply with the

CTCA.

(3)    Mr. Hiramanek's § 1983 claims are dismissed.  The dismissal is with prejudice as Mr.

Hiramanek has failed to show in his papers or at the hearing that Judge Clark's actions were

taken completely separate from the state court litigation involving Mr. Hiramanek and over

which Judge Clark presided.

In addition, as noted above, the Court strikes Plaintiffs' objection which is located at Docket

No. 59 and further strikes those pages of Plaintiffs' supplemental briefing which address issues for

which the Court did not seek supplemental briefing.

This order disposes of Docket No. 51.


IT IS SO ORDERED.


Dated:  January 10, 2014

_____
EDWARD M. CHEN
United States District Judge

21