1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ADIL HIRAMANEK, et al.,

       Plaintiffs,

v.

L. MICHAEL CLARK, et al.,

       Defendants.

Case No.  5:13-cv-00228-RMW

**ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT FOR CLAIMS INVOLVING MCCHRISTIAN, PLETT, AND POLUMBUS**

Re: Dkt. Nos. 430, 438

      Pro se plaintiffs Roda and Adil Hiramanek, mother and son, filed suit against various defendants associated with the Santa Clara County Superior Court, alleging violations of their civil rights. Dkt. No. 94-1 (Revised Second Amended Complaint, or "RSAC"). Before the court are a motion for partial summary judgment filed by defendants Daryl McChristian, Bryan Plett, and Timothy Polumbus (herein "defendants"), Dkt. No. 430, and a motion for partial summary judgment against these defendants filed by plaintiff Adil Hiramanek, Dkt. No. 438.[1] The court held a hearing on these motions on February 5, 2016. Having considered the parties' submissions, the record in this case, and the relevant law, the court hereby GRANTS defendants' motion and DENIES plaintiff's motion.

---

[1] This order does not address plaintiffs' claims against defendants Superior Court of California, County of Santa Clara or Beth Miller. *See* Dkt. Nos. 546, 570 (orders granting summary judgment in favor of defendant Superior Court); Dkt. No. 708 (jury verdict in favor of Miller).

*United States District Court*
*Northern District of California*

# I.  BACKGROUND

Plaintiffs commenced this lawsuit on January 17, 2013 asserting claims arising out of their interactions with individuals associated with defendant Superior Court. Defendants McChristian, Plett, and Polumbus are employees of the Santa Clara County Sheriff's Office and have worked at the Superior Court's Family Courthouse. *See* RSAC ¶ 8. After several amendments to plaintiffs' complaint that followed reviews under 28 U.S.C. § 1915(e) and motions to dismiss by certain defendants, this court allowed Mr. Hiramanek to proceed on the following claims from the operative complaint against McChristian, Plett, and Polumbus:

> **Claim 10:** 42 U.S.C. § 1983 claim against Polumbus and Plett in their individual capacities, based on alleged violation of plaintiff's Fourth Amendment rights, including "unreasonable and invasive bodily search, search of his property, seizure of his property, including mobile phone, deleting information/writing" and "unreasonabl[e] [detention] for unreasonably long periods of time."

> **Claim 17:** Section 1983 claim against McChristian and Plett in their individual capacities, based on alleged violations of plaintiff's Fourth and Fifth Amendment rights, when McChristian and Plett allegedly detained, interrogated, and confined plaintiff at the Santa Clara County Superior Courthouse.

> **Claim 44:** Section 1983 claim against McChristian and Plett in their individual capacities, based on alleged violations of plaintiff's Fourth and Fifth Amendment rights, when McChristian and Plett allegedly used excessive force against plaintiff when arresting him.

Dkt. No. 201 at 2-3. Claims 10, 17, and 44 are asserted by plaintiff Adil Hiramanek and not by plaintiff Roda Hiramanek.

## A.  Claim 10

Polumbus operates the x-ray screening machine at the Family Courthouse security station. Dkt. No. 431 ("Polumbus Decl.") ¶ 2. Under Claim 10 of the RSAC, plaintiff alleges that Polumbus illegally searched plaintiff's bags when plaintiff entered the courthouse. Plaintiff also alleges that on January 14, 2013, Polumbus allowed other individuals to pass through security but made plaintiff wait for an excessive amount of time before Polumbus manually searched plaintiff's bag. RSAC ¶¶ 109-110.

Plett is a Deputy Sheriff. He was a member of the security detail at the Family Courthouse security station, and he served as courtroom deputy to Superior Court Judge Michael Clark. Dkt.

2

No. 433 ("Plett Decl.") ¶¶ 2–4. Under Claim 10 of the RSAC, plaintiff alleges that Plett illegally confiscated and searched plaintiff's cell phone in Judge Clark's courtroom on April 16, 2012. RSAC ¶ 116. Plaintiff also alleges that Plett illegally detained him, confiscated his cell phone, and made plaintiff delete materials from his cell phone on January 15, 2013. *Id.* ¶¶ 117-118. Finally, plaintiff alleges that on June 8, 2012, Plett ordered plaintiff to step away from a conversation Plett was having with a court employee and "sit in the corner" of the courthouse lobby. *Id.* ¶ 119.

### B.    Claim 17

McChristian is a Deputy Sheriff and coordinated all Family Courthouse security. Dkt. No. 432 ("McChristian Decl.") ¶ 2. Under Claim 17 of the RSAC, plaintiff alleges that on June 11, 2012, McChristian illegally detained and questioned plaintiff in connection with a criminal investigation into allegations that plaintiff filed court documents with forged signatures and/or violated an order that declared plaintiff a vexatious litigant. *See* RSAC ¶¶ 181-192; Dkt. No. 432 ¶ 3. This claim also includes allegations that McChristian questioned plaintiff in violation of his *Miranda* rights. *Id.* ¶ 197.

Under Claim 17 of the RSAC, plaintiff also alleges that on June 29, 2012, McChristian and Plett questioned him in violation of his *Miranda* rights and denied plaintiff water and pain medication after his arrest on forgery charges. *See* RSAC ¶¶ 199-203.

### C.    Claim 44

Under Claim 44 of the RSAC, plaintiff sues McChristian and Plett for excessive force and cruel and unusual punishment during his arrest on June 29, 2012. Specifically, he alleges that McChristian and Plett denied him water and pain medication (as in Claim Number 17), and that Plett—but not McChristian—used excessive force by twisting his arm while plaintiff was in handcuffs. *See* RSAC ¶¶ 1067-72.

### D.    Procedural History

McChristian, Plett, and Polumbus filed their motion for summary judgment on December 30, 2015. Dkt. No. 430. Plaintiff filed an opposition on January 14, 2016, Dkt. No. 449, and defendants filed a reply on January 21, 2016, Dkt. No. 454.

Plaintiff filed his motion for summary judgment against McChristian, Plett, and Polumbus on December 31, 2015. Dkt. No. 438. Defendants filed an opposition on January 14, 2016, Dkt. No. 446, and Plaintiff filed a reply on January 21, 2016, Dkt. No. 459.

The court held a hearing on these motions on February 5, 2016.

## II.     ANALYSIS

### A.     Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1)(A). The court is only concerned with disputes over material facts, and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to

United States District Court
Northern District of California

United States District Court
Northern District of California

1  judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

2      The court's function on a summary judgment motion is not to make credibility

3  determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W.*

4  *Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence

5  must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn

6  from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

7      **B.      Evidentiary Issues**

8      Defendants object to the admissibility of deposition transcripts, Dkt. No. 439 Ex. B, I, and

9  J, that Mr. Hiramanek, rather than the certified court reporter, created. *E.g.*, Dkt. No. 454 at 1. The

10  court finds that Mr. Hiramanek's transcripts contain argumentative characterizations of witness

11  actions that bring the transcripts' reliability into question. *See, e.g.*, Dkt. No. 439 at ECF p. 150:8-

12  9 ("[video shows wrist bent at almost 90 degree]"), ECF p. 246:2-4 ("[video tape of the deposition

13  corroborates the two documents being displayed on camera]"). In general, defendants' objections

14  are sustained, and the court will not rely on Mr. Hiramanek's unofficial transcripts unless

15  otherwise specified.

16      Plaintiff objects to defendants' submission of a photograph of a sign at the Family

17  Courthouse warning visitors that photography is prohibited, Dkt. No. 431-1, because defendants

18  allegedly did not produce the photograph during discovery. Dkt. No. 449 at 5. Defendants claim

19  they produced the photograph at a deposition. Dkt. No. 454 at 4. The court need not rule on the

20  admissibility of the photograph itself because plaintiff fails to rebut Polumbus's declaration

21  regarding signage at the entrance to the Family Courthouse. *See* Dkt. No. 431 ¶ 3.

22      The court need not rule on any other objections to evidence that this order does not cite or

23  rely upon.

24      **C.      Deputies' Motion for Summary Judgment Against Plaintiff**

25          **1.      Claim 10 – Polumbus's Security Screenings**

26      Hiramanek's claims against Polumbus relate to Polumbus's searches of plaintiff's bags for

27  prohibited items at the Santa Clara County Family Courthouse. Polumbus seeks judgment on

28

5:13-cv-00228-RMW
ORDER RE: MOTS. FOR SUMMARY J. -- CLAIMS INVOLVING MCCHRISTIAN, PLETT, AND POLUMBUS

Claim 10 on the grounds that: (1) he did not violate plaintiff's constitutional right to be free from illegal detention, search and seizure; or, alternatively (2) that he is entitled to qualified immunity.

### a.    Rules on Photography and Recording Devices

Because plaintiff's allegations under Claim 10 largely relate to incidents involving his electronic devices, it is necessary to discuss California court rules regarding photography and recording devices. California Rule of Court 1.150 prohibits recording courthouse proceedings without prior court approval. The rule states, in relevant part: "Except as provided in this rule, court proceedings may not be photographed, recorded, or broadcast." Cal. R. of Court 1.150(c). "The judge may permit inconspicuous personal recording devices to be used by persons in a courtroom to make sound recordings as personal notes of the proceedings. A person proposing to use a recording device must obtain advance permission from the judge." Cal. R. of Court 1.150(d). "Any violation of [Rule 1.150] or an order made under this rule is an unlawful interference with the proceedings of the court and may be the basis for . . . a citation for contempt of court, or an order imposing monetary or other sanctions as provided by law." Cal. R. of Court 1.150(f).

The Santa Clara County Superior Court has extended the prohibition on photography and recording beyond courtrooms:

> Any and all "photographing" and/or "recording" and/or "broadcasting" as defined by California Rules of Court, Rule 1.150(b) of people, things, conversations, or proceedings is strictly prohibited in any courthouse facility, including but not limited to stairways, elevators, waiting areas, hallways, entrances, **security screening stations**, service areas, through windows, through doors, and with respect to any other accessible areas of courthouse facilities, whether access was intended or not, absent written order of the Supervising Judge of the specific courthouse facility. **Any device that appears capable of photographing, recording, or broadcasting is subject to confiscation**.

Superior Court of California, County of Santa Clara, General Rule 2B(1) (emphasis added).

General Rule 2C provides penalties for violating these rules:

> Any violation of this Local Rule or an order made under this Local Rule, or of California Rule of Court, Rule 1.150, is an unlawful interference with court proceedings and may be the basis for an order terminating media coverage, a citation for contempt of court, or an order imposing monetary or other sanctions as provided by law.

*Id.* Rule 2C. According to Polumbus, the Superior Court Family Courthouse has signage posted at its entrance near the security screening station advising that all persons and their property are subject to screening inspections and that no photographs, video, or audio recordings are permitted anywhere in the facility except with a proper order from the court. Dkt. No. 431 ¶ 3.

### b.   Polumbus's Security Screenings of Plaintiff

Plaintiff has made numerous appearances at the Family Courthouse. *See, e.g.*, RSAC ¶ 108. Polumbus explains that every time plaintiff passed through the Family Courthouse security station in Polumbus's presence, plaintiff placed a bag on the x-ray screening machine's conveyor belt. Dkt. No. 431 ¶ 6. Every time plaintiff placed his bag through the x-ray machine while Polumbus was operating it, the machine showed that the bag contained at least one camera and/or recording device. *Id*. In each such instance, Polumbus retained the device(s) in question, provided plaintiff with a claim card, and then returned the device(s) to plaintiff when he exited the building. *Id.*

It is undisputed that on one occasion, Polumbus retained plaintiff's bag for some amount of time[2] and allowed other individuals to pass through the security line before Polumbus manually searched plaintiff's bag. *See id.* ¶ 7, RSAC ¶ 109. Polumbus indicates that he retained plaintiff's bag because it appeared from the x-ray image that plaintiff's bag was excessively full, and searching it would unduly delay others from entering the courthouse. Dkt. No. 431 ¶ 7.

### c.   Warrantless Administrative Searches

Polumbus argues that he is entitled to summary judgment because performing a warrantless administrative search of plaintiff's bag did not violate plaintiff's constitutional rights. Under the Fourth Amendment, a warrantless search of private property without consent is unreasonable, except in specific classes of cases. Among the "carefully defined classes of cases" for which no warrant is needed are administrative searches. *Klarfeld v. United States*, 944 F.2d 583, 586 (9th Cir. 1991). Warrantless administrative searches are authorized for persons entering

---

[2] The parties appear to dispute the exact amount of time, but plaintiff does not argue how, if at all, the amount of time the bag was held should affect the court's analysis of whether a search was unreasonable.

sensitive public facilities, including courthouses. *Id.* (finding that requirement that plaintiff remove shoes at courthouse security checkpoint was not facially unreasonable but remanding for determination of whether less intrusive searches were available); *McMorris v. Alioto*, 567 F.2d 897, 899 (9th Cir. 1978) (upholding searches of briefcases for weapons and pat-down screenings of individuals who set off magnetometers at courthouse). Nonetheless, "[t]o pass constitutional muster, an administrative search must meet the Fourth Amendment's standard of reasonableness." *Klarfeld*, 944 F.2d at 586 (citation omitted). As the Ninth Circuit explained, "[t]he search must be limited and no more intrusive than necessary to protect against the danger to be avoided, but nevertheless reasonably effective to discover the materials sought. The inspection must be conducted for a purpose other than the gathering of evidence for criminal prosecutions." *McMorris*, 567 F.2d at 899. Express consent to an administrative search is not required; implied consent is sufficient. *Id.* at 900-01 (finding that people who enter courthouse provide implied consent to passing through magnetometer).

Citing *McMorris* and *Klarfeld*, Polumbus argues that he is entitled to summary judgment because using an x-ray scanner and a secondary manual screening procedure to search for prohibited items such as weapons and recording devices was reasonable. Dkt. No. 430 at 9. Plaintiff does not challenge the general legal standard articulated above. *See* Dkt. No. 449 at 11 (citing *Klarfeld*). Instead, plaintiff raises several arguments. First, plaintiff asserts that he never brought weapons to the courthouse and that no security emergency justified a search of his bag. Dkt. No. 449 at 4. Plaintiff's argument is unpersuasive. Courts have long held that screenings for weapons are acceptable at courthouses, even in the absence of a specific, imminent threat. *See McMorris*, 567 F.2d at 899. The court acknowledges that smartphones, cameras, and other recording devices do not pose the same imminent threat as guns or knives, for example. Such devices could, however, disrupt court proceedings, allow witnesses or jurors to be photographed and intimidated, or allow criminals to record and then circumvent security protocols. California Rule of Court 1.150(e)(3)(E) explicitly recognizes "privacy rights of all participants in the proceeding, including witnesses, jurors, and victims." Plaintiff, moreover, cites no authority

1    indicating that it is impermissible to search for devices that could interfere with these privacy and

2    safety interests.

3        Plaintiff next attacks the rules under which his bag was searched. *See* Dkt. No. 449 at 2. He

4    argues that California Rule of Court 1.150(c) only prohibits photographing or recording "court

5    proceedings," not areas of a courthouse that are outside of courtrooms. The court need not

6    determine whether plaintiff's interpretation of Rule 1.150 is correct because, as noted above, Santa

7    Clara County Superior Court General Rule 2B prohibits photographing and recording "in any

8    courthouse facility." Moreover, the local rule explicitly provides that "[a]ny device that appears

9    capable of photographing, recording, or broadcasting is subject to confiscation." *Id.* Plaintiff

10   argues that Superior Court General Rule 2E is preempted by state Rule 1.150 and that Rule 1.150

11   is preempted by the U.S. Constitution. However, plaintiff provides no authority or analysis to

12   suggest inconsistency between these rules, let alone preemption.

13       Plaintiff asserts that when he approached the checkpoint with a recording device, he

14   removed the device from his bag before any search occurred and handed it to security screeners,

15   thus eliminating their need to search the bag. Dkt. No. 449 at 3. However, plaintiff's brief cites no

16   evidence that he handed his devices to Polumbus. Moreover, even if plaintiff had handed an

17   individual device to Polumbus, plaintiff does not dispute the portion of Polumbus's sworn

18   declaration that states: "On every one of the occasions that Hiramanek placed his bag through the

19   x-ray machine while I was operating it, the machine showed that the bag contained at least one

20   camera and/or recording device. Usually it was multiple devices, and sometimes as many as six

21   devices." Dkt. No. 431 ¶ 6. All of the admissible evidence presented suggests that Polumbus was

22   searching for banned electronic devices that would be returned to plaintiff when plaintiff left the

23   courthouse; plaintiff has presented no evidence that Polumbus was gathering evidence for criminal

24   prosecution. Thus, the court finds that searching plaintiff's bag was reasonable.

25       Polumbus also argues that by passing through the security checkpoint with a bag, when

26   plaintiff could have left the bag in another location, plaintiff gave implied consent to an x-ray

27   search or manual search of his belongings. Dkt. No. 430 at 10. Plaintiff argues that he was not free

28

to return his bag to his car, as his court appearance was required in a suit initiated by his ex-wife, and he needed his papers for hearings. Dkt. No. 449 at 4-5. The Ninth Circuit rejected plaintiff's argument in *McMorris* when it ruled: "Although an attorney's consent to a search is exacted as the price of entering the courthouse to discharge duties necessary to his profession, the search is nevertheless consensual in the same way as in the airport search cases." 567 F.2d at 901. Moreover, as Polumbus points out, plaintiff does not dispute that he could have left any recording devices behind and still entered the courthouse with his bag and his papers.

Based on the factual record presented to the court, the court agrees with Polumbus that the searches of plaintiff's bag did not violate plaintiff's constitutional rights.

### d.      Qualified Immunity

Polumbus also contends that he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (quotation marks and citation omitted). In assessing a claim of qualified immunity, a court must examine: (1) whether the facts that a plaintiff has alleged (in the case of a motion to dismiss) or shown (in the case of summary judgment) make out a violation of a constitutional right; and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct. *See id.* at 232. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Id.* at 236.

In this case, Polumbus argues that both state and local rules prohibit the use of recording devices in courtrooms and that when plaintiff placed his bag on the x-ray scanning device, plaintiff consented to a search of the bag. Polumbus notes that he performed manual searches of bags only when the x-ray revealed items that may have been prohibited, such as recording devices. *See* Dkt.

5:13-cv-00228-RMW
ORDER RE: MOTS. FOR SUMMARY J. -- CLAIMS INVOLVING MCCHRISTIAN, PLETT, AND POLUMBUS

United States District Court
Northern District of California

No. 431 ¶ 7. Polumbus argues that a reasonable security screener in his position would have believed that his actions were lawful.

In response, plaintiff argues that in a deposition, Polumbus offered no factual predicate for his qualified immunity defense. *See* Dkt. No. 449 at 9. Plaintiff's argument incorrectly assumes that Polumbus had the burden of submitting testimony in support of his immunity arguments. In evaluating qualified immunity, "a court must decide whether the facts that a ***plaintiff*** has alleged or shown make out a violation of a constitutional right," and, if so, "whether the right at issue was 'clearly established.'" *Pearson*, 555 U.S. at 232 (emphasis added and citations omitted).

Plaintiff generally refers to various constitutional rights that he claims were violated, including the right for redress of grievances, the right to freedom from unreasonable search and seizure, the right to due process, and the right to freedom from cruel and unusual punishment, among others. *See* Dkt. No. 449 at 9. Plaintiff also cites authority suggesting that searches should be limited and no more intrusive than necessary to protect against the danger to be avoided. *See id.* at 12. Plaintiff does not, however, argue or cite any authority suggesting that it is unconstitutional to search bags that enter courthouses for prohibited items. On the other hand, Polumbus cites two Ninth Circuit opinions indicating that warrantless administrative searches for contraband at courthouses may be reasonable. *See Klarfeld*, 944 F.2d at 586; *McMorris*, 567 F.2d at 897. Even if Polumbus had been mistaken in believing that searching plaintiff's bag does not violate the constitution—and the court is not convinced that he was mistaken—the mistake was not so clear as to expose defendant to liability. The court concludes that qualified immunity protects Polumbus.

For the reasons stated above, Polumbus's motion for summary judgment is GRANTED.

### 2.    Claim 10 – Plett

Plaintiff's claims against Plett under Claim 10 relate to three incidents. First, on or about April 16, 2012, Plett confiscated plaintiff's cell phone after he saw plaintiff using the phone during proceedings in Judge Clark's courtroom. Dkt. No. 433 ¶ 3; *see* RSAC ¶ 116. Plett returned the phone when plaintiff left the courtroom. Dkt. No. 433 ¶ 3. Second, on or about January 15, 2013,

5:13-cv-00228-RMW

ORDER RE: MOTS. FOR SUMMARY J. -- CLAIMS INVOLVING MCCHRISTIAN, PLETT, AND POLUMBUS

United States District Court
Northern District of California

Plett questioned plaintiff about plaintiff taking photos of a courthouse security checkpoint, and Plett had plaintiff delete two photos of the checkpoint from plaintiff's phone. Dkt. No. 433 ¶ 4. Third, on or about June 8, 2012, Plett allegedly ordered plaintiff to step away from a conversation Plett was having with another courthouse employee.[3] *See* RSAC ¶ 119. Plett seeks judgment on Claim 10 on the grounds: (1) that he did not violate plaintiff's constitutional right to be free from illegal detention, search and seizure; or, alternatively: (2) that he is entitled to qualified immunity.

### a.     April 16, 2012 Incidents

Plett argues that both the April 2012 and the January 2013 "seizures" of plaintiff's cell phone were lawful under the plain-view exception to the Fourth Amendment. Dkt. No. 430 at 13, 14. Law enforcement officers may seize evidence without a warrant pursuant to the plain-view exception if (1) the initial intrusion is lawful, and (2) the incriminatory nature of the evidence is immediately apparent to the officer. *United States v. Garcia*, 205 F.3d 1182, 1187 (9th Cir. 2000). The U.S. Supreme Court has held that "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

In this case, as noted above, California Rule of Court 1.150(f) and Santa Clara County Superior Court General Rule 2C make unauthorized use of certain electronic devices in courthouse locations punishable by a citation for contempt. Moreover, as Plett points out, a person guilty of contempt of court may be guilty of a corresponding misdemeanor under California Penal Code Section 166. Plaintiff does not dispute Plett's assertion that on or about April 16, 2012, Plett observed plaintiff using a cellphone during proceedings in court, and Plett then seized the device. Because plaintiff's cell phone was the instrument of a crime and was in plain view, the Fourth

---

[3] To the extent that plaintiff asserts that Claim 10 covers alleged incidents beyond those discussed in this order, plaintiff is improperly attempting to extend Claim 10 beyond the scope previously allowed by this court's orders. *Compare* Dkt. No. 449 at 8 (citing RSAC ¶ 115 for the allegation that Plett "breathed down Plaintiff's neck") with Dkt. No. 201 at 2 (noting that RSAC ¶¶ 108-110, 116-19 remained at issue under Claim 10). Plaintiff's general allegations of intimidation fail to state a claim on which relief can be granted.

1   Amendment allowed Plett to seize the device.

2       Plaintiff argues that it was not the seizure, but instead Plett's "intensively searching

3   ADIL's mobile phone, fishing for information," that forms the basis for plaintiff's claim. Dkt. No.

4   449 at 8. Here however, plaintiff does not point to any admissible evidence that a cell phone

5   search even happened in April 2012. Plaintiff merely cites to allegations in his complaint.

6   However, allegations in a pleading are not evidence that can be used to defeat summary judgment.

7   *See Celotex*, 477 U.S. at 324 (holding that Rule 56 "requires the nonmoving party to go beyond

8   the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and

9   admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'").

10      Even if Plett did search the phone that he seized from plaintiff in the courtroom, and even

11  if that search were unlawful absent a warrant—and plaintiff has cited no cases that support such a

12  finding—Plett is entitled to qualified immunity. This is true because the unlawfulness of searching

13  a cellphone that was the instrument of a crime was not clearly established at the time of the alleged

14  search in April 2012. *See Rouzan v. Dorta*, No. EDCV 12-1361-BRO JPR, 2014 WL 1716094

15  (C.D. Cal. Mar. 12, 2014) (recommending summary judgment that qualified immunity protected

16  sheriff's deputy who allegedly searched phone with camera used in courthouse because "the law

17  regarding the search of a cellphone incident to arrest was not clearly established"), *report and*

18  *recommendation adopted*, 2014 WL 1725783 (C.D. Cal. May 1, 2014).

19      While it is true that the U.S. Supreme Court eventually ruled that "officers must generally

20  secure a warrant before conducting" a search of a cellphone incident to a lawful arrest, that

21  decision was not issued until June 25, 2014. *Riley v. California*, 134 S. Ct. 2473, 2485 (2014).

22  Indeed, *Riley* was an appeal of a 2013 California Court of Appeal decision that had held that a

23  search of a cellphone incident to a lawful arrest did *not* require a warrant. *See Rouzan*, 2014 WL

24  1716094 at *10 n.9 (citing *People v. Riley*, No. D059840, 2013 WL 475242, at *6 (Cal. Ct. App.

25  Feb.8, 2013)). Qualified immunity is determined "at the time of defendant's alleged misconduct."

26  *Pearson*, 555 U.S. at 232. Regardless of whether detainees now have a clearly established right to

27  be free from warrantless cellphone searches—an issue that is not before this court—such a right

28

United States District Court
Northern District of California

5:13-cv-00228-RMW
ORDER RE: MOTS. FOR SUMMARY J. -- CLAIMS INVOLVING MCCHRISTIAN, PLETT, AND POLUMBUS

1    was not clearly established in 2012.[4]

2           Accordingly, Plett is entitled to qualified immunity.

3                          **b.      January 15, 2013 Incidents**

4           Plaintiff alleges that Plett violated the Fourth Amendment on January 15, 2013 by

5    detaining plaintiff, seizing his phone, and deleting photos from the phone. Plett argues that it was

6    lawful for Plett to detain plaintiff because Plett believed that plaintiff was committing a crime.

7    Police may "seize" a citizen for a brief investigatory stop if the stop is supported by "reasonable

8    suspicion." *Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir. 1993) (citing *Terry v. Ohio*, 392

9    U.S. 1, 20–22 (1968)). Moreover, police may arrest a citizen if they have "probable cause" to

10   believe he committed a crime. *Id.* Plett argues that he had probable cause to believe that plaintiff

11   was committing a crime because plaintiff does not dispute that on January 15, 2013, a sheriff's

12   deputy observed plaintiff take photographs of the security checkpoint at the Family Courthouse.

13   *See* Dkt. No. 433 ¶ 4; Dkt. No.449 at 6-7. While plaintiff argues that taking photographs *outside* a

14   courtroom does not violate California Rule of Court 1.150, Dkt. No. 449 at 7, plaintiff does not

15   dispute that taking photographs of a security checkpoint in the courthouse violates Santa Clara

16   County Superior Court General Rule 2B. Based on the undisputed factual record, Plett had

17   probable cause to believe that plaintiff committed a crime by taking unauthorized photographs,

18   and thus Plett did not violate the Fourth Amendment when he detained plaintiff for questioning.

19   Moreover, for the reasons discussed above with respect to the April 16, 2012 incidents, Plett did

20   not violate the Fourth Amendment by seizing plaintiff's phone on January 15, 2013.

21          Plaintiff's opposition brief alludes to an alleged admission by Plett that using a cell phone

22   to record a crime at a courthouse would not violate court rules. Dkt. No. 449 at 7. However,

23

24   _____

25   [4] Plaintiff's remaining arguments against qualified immunity are unpersuasive. Plaintiff cites
     defendants' answer and plaintiff's inadmissible summaries of defendant McChristian's deposition
26   testimony in support of the argument that defendants generally "were knowledgeable on the
     established rights." Dkt. No. 449 at 14-15. Defendants' subjective knowledge of rights is not at
27   issue, however, because qualified immunity turns on "the objective legal reasonableness of the
     action." *Pearson*, 555 U.S. at 244 (quotation marks omitted). Even if defendants' subjective
28   knowledge of constitutional law were relevant and plaintiff's citations to uncertified deposition
     transcripts were admissible, the cited testimony does not support plaintiff's argument.

United States District Court
Northern District of California

1    plaintiff cites no authority suggesting that a "crime recording" exception exists to the Superior

2    Court's prohibition of photography and recording. Moreover, the deposition testimony plaintiff

3    cites in support of his argument—even if it were admissible—only suggests that Plett believed it

4    would be acceptable for a rape victim to record an attack at the courthouse, not that it was legal for

5    plaintiff to take pictures of the security checkpoint. *See* Dkt. No. 439 Ex. I at 10:23-12:18

6    (Hiramanek's unofficial transcript of Plett's deposition).

7         With respect to the deletion of photos, Plett's sworn declaration indicates that plaintiff

8    voluntarily deleted the photos of the security checkpoint at Plett's request. Dkt. No. 433 ¶ 5.

9    Plaintiff argues that the photos were involuntarily deleted, Dkt. No. 449 at 6-7, but plaintiff cites

10   no admissible evidence in support of this argument. Even if Plett had searched plaintiff's

11   cellphone without his consent, however, and even if that search were unlawful, for the reasons

12   described above with respect to the April 16, 2012 incidents, qualified immunity would shield

13   Plett from liability. As explained above, the unlawfulness of searching a cellphone that was the

14   instrument of a crime was not clearly established at the time of the alleged search in January 2013.

                        c.    **June 8, 2012 Incidents**

15
16        Plaintiff alleges that on or about June 8, 2012, Plett allegedly ordered plaintiff to step away

17   from a conversation Plett was having with a courthouse employee and sit in the corner of the

18   Family Courthouse lobby under "show of authority" and "threat of arrest." RSAC ¶ 119. The only

19   evidence plaintiff offers in support of these allegations is a reference to paragraph 56 of plaintiff's

20   declaration, Dkt No. 439, which in turn cites to Hiramanek's unofficial transcript of Plett's

21   deposition at pages 27:7–30:24. Even if the court were to consider this as evidence, it would not

22   provide a sufficient basis to support plaintiff's claims. The unofficial transcript indicates that Plett

23   testified that he "asked" Hiramanek to step away from a conversation he was having regarding a

24   third party's confidential case file. *See* Dkt. No. 439 Ex. I at 28:19-22. Furthermore, according to

25   plaintiff's unofficial transcript, Plett answered "no" when he was asked whether he would have

26   had plaintiff arrested for not moving away from the conversation. *Id.* at 30:9-11.

27        The court finds that the evidence of record does not support plaintiff's claims and that

28

5:13-cv-00228-RMW

ORDER RE: MOTS. FOR SUMMARY J. -- CLAIMS INVOLVING MCCHRISTIAN, PLETT, AND POLUMBUS

United States District Court
Northern District of California

1    summary judgment on Claim 10 in favor of Plett is appropriate.

2              **3.    Claim 17 – McChristian and the June 11, 2012 Interrogation**

3              Plaintiff's claims against McChristian under Claim 17 of the RSAC arise from an incident

4    on June 11, 2012 in which McChristian interrogated plaintiff at the Santa Clara County Superior

5    Courthouse and a subsequent arrest of plaintiff by McChristian and Plett that is discussed below.

6    McChristian seeks judgment on Claim 17 on the grounds: (1) that he did not violate plaintiff's

7    constitutional rights; or, alternatively (2) that he is entitled to qualified immunity.

8              **a.   Whether Plaintiff Was in Custody**

9              McChristian's main argument with respect to the June 11, 2012 interrogation is that no

10   arrest occurred within the meaning of the Fourth Amendment that would trigger the requirements

11   of *Miranda*. As the Ninth Circuit has explained, stops under the Fourth Amendment fall under

12   three categories:

13              First, police may stop a citizen for questioning at any time, so long
                as that citizen recognizes that he or she is free to leave. Such brief,
14              "consensual" exchanges need not be supported by any suspicion that
                the citizen is engaged in wrongdoing, and such stops are not
15              considered seizures. Second, the police may "seize" citizens for
                brief, investigatory stops. This class of stops is not consensual, and
16              such stops must be supported by "reasonable suspicion." Finally,
                police stops may be full-scale arrests. These stops, of course, are
17              seizures, and must be supported by probable cause.

18   *Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir. 1993) (citations omitted). The U.S. Supreme

19   Court has held that *Miranda* protections only come into play when "there is a 'formal arrest or

20   restraint on freedom of movement' of the degree associated with a formal arrest." *California v.*

21   *Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)).

22             In this case, McChristian's declaration indicates that in early June 2012, McChristian was

23   investigating accusations that plaintiff had signed an attorney's signature on court documents

24   without the attorney's consent. Dkt. No. 432 ¶ 3. As part of McChristian's investigation, on June

25   11, 2012, during a lunch recess in plaintiff's child custody trial, McChristian, who was

26   accompanied by two other Sheriff's Department employees, Lamonde Davis and Michael Low,[5]

27

28   _____
     [5] This court previously denied plaintiff's motion to amend his complaint to add Davis and Low as

5:13-cv-00228-RMW
ORDER RE: MOTS. FOR SUMMARY J. -- CLAIMS INVOLVING MCCHRISTIAN, PLETT, AND POLUMBUS

*United States District Court*
*Northern District of California*

asked plaintiff if he would speak with them about a few issues. *Id.* ¶ 4. McChristian's account of

what followed indicates that McChristian explicitly told Hiramanek that he was free to leave:

> Hiramanek initially stated he was dealing with a civil court case. I told Hiramanek I only wanted a few minutes of his time to clear up a few allegations. Hiramanek walked with me, Davis and Low into Department 8, where we all sat at a table. Davis, Low, and I sat on one side of the table while Hiramanek sat by himself on the opposite side. I took out an audio voice recorder and informed Hiramanek I intended to record our conversation. Hiramanek refused, so I turned off the device. Hiramanek stated that he wanted someone else present and that he was going to walk out. ***I told Hiramanek he was free to leave at any time***. Hiramanek said he did not want to talk because he did not want to be ambushed. Davis and I told Hiramanek we wanted to talk to him about documents filed by him on behalf of multiple attorneys who said they did not sign them or agree to have him file them. Hiramanek again asked if the recording device was off because he would not talk if it was on. I showed him that it was off. Hiramanek said he wanted someone else present as a witness, but ***Hiramanek did not attempt to leave***. Instead Hiramanek began asking questions about other subjects. He then spontaneously stated that he did not sign any documents. Sergeant Davis ended the conversation by telling Hiramanek that he should go have lunch and prepare for his civil case beginning at 1:30 p.m.

*Id.* (emphasis added). *See also* Dkt. No. 432-1 (police report of the June 11, 2012 questioning).

Plaintiff's opposition brief does not point to any evidence disputing McChristian's account

of what happened. Plaintiff cites to various allegations in his complaint, Dkt. No. 449 at 16, but as

noted above, allegations in a complaint do not constitute admissible evidence that can defeat a

motion for summary judgment. In any event, while the cited paragraphs from the complaint

*characterize* the facts as "coercion" or "overbearing tactics, force, threat, et al.," plaintiff does not

even allege that McChristian's version of what was said or done on June 11, 2012 was incorrect.

Based on the undisputed record, the court finds that no constitutional violation occurred

because plaintiff was not in custody on June 11, 2012, and thus that the deputies were not required

to read plaintiff his *Miranda* warnings or provide him the opportunity to speak to an attorney. *See*

*Mathiason*, 429 U.S. at 495 (holding that suspect who came voluntarily into police station, was

informed that he was not under arrest, provided a half-hour interview in which he confessed to

---

defendants because, *inter alia*, plaintiff knew of their involvement in the June 11, 2012 incident for more than two years but waited until days before the dispositive motion deadline in this case to set a hearing on his motion to amend. Dkt. Nos. 424, 467.

5:13-cv-00228-RMW
ORDER RE: MOTS. FOR SUMMARY J. -- CLAIMS INVOLVING MCCHRISTIAN, PLETT, AND POLUMBUS

United States District Court
Northern District of California

1   burglary, and was then released, was not in custody such that *Miranda* warnings would be

2   required).

3                              **b.      Qualified Immunity**

4          McChristian argues in the alternative that even if he was mistaken and a constitutional

5   violation occurred on June 11, 2012, qualified immunity protects him from liability. The court

6   agrees. More than thirty years ago, the U.S. Supreme Court noted that the question of "whether

7   *Miranda* warnings are required if the suspect is not placed under arrest . . . has already been settled

8   clearly." *California v. Beheler*, 463 U.S. 1121, 1121-22 (1983). To the extent that plaintiff's rights

9   were violated, those rights were not clearly established.

10         At the hearing on the instant motions, plaintiff argued that the timing of the June 11, 2012

11  interrogation, which occurred during a lunch break in plaintiff's child custody trial, made the

12  interrogation unconstitutionally coercive and that defendants should have known this. In support

13  of his argument, plaintiff cited *Lynumn v. Illinois*, 372 U.S. 528 (1963) and *Haynes v. State of*

14  *Washington*, 373 U.S. 503 (1963). Both of these cases can be readily distinguished, however, at

15  least because in both cases the defendant was under arrest when the confession at issue occurred.[6]

16  Defendants did not arrest plaintiff on June 11, 2012, nor is there any evidence that defendants

17  attempted to use what plaintiff said against him in criminal proceedings. Moreover, unlike the

18  plaintiff in *Lynumn*, Mr. Hiramanek does not offer any evidence that defendants threatened to

19  remove Mr. Hiramanek's children if he did not answer their questions on June 11, 2012.

20         McChristian is entitled to qualified immunity for the June 11, 2012 questioning because

21  the questioning did not violate any of plaintiff's clearly established rights.

22                      **4.      Claims 17 and 44 – Plett and McChristian and the June 29, 2012 Arrest**

23         Plaintiff's remaining allegations against Plett and McChristian relate to plaintiff's arrest

24  pursuant to a warrant by Plett and McChristian at the Superior Courthouse on June 29, 2012.

25  Plaintiff alleges that his arm was twisted as he was taken into custody, that he was asked questions

26

27  [6] The other cases cited in plaintiff's opposition brief, *see* Dkt. No. 449 at 17-18, are similarly
    distinguishable from the instant case because the cited cases involved interrogation of suspects
28  who were in police custody.

5:13-cv-00228-RMW
ORDER RE: MOTS. FOR SUMMARY J. -- CLAIMS INVOLVING MCCHRISTIAN, PLETT, AND POLUMBUS

1    without an attorney present, and that he was denied water and pain medication following root

2    canal surgery. *See* RSAC ¶¶ 201-03, 1070-72. McChristian and Plett seek judgment on Claims 17

3    and 44 on the grounds: (1) that they did not violate plaintiff's *Miranda* rights and did not

4    unconstitutionally deny plaintiff water and medications; or, alternatively (2) that they are entitled

5    to qualified immunity.

6                              a.        **Questioning Without Attorney**

7            Defendants argue that, to the extent they asked plaintiff questions following his arrest, they

8    did so (1) only after McChristian informed plaintiff of plaintiff's *Miranda* rights; and (2) to collect

9    non-investigatory booking information. Dkt. No. 430 at 18; Dkt. No. 432 ¶¶ 6-7; Dkt. No. 433 ¶ 7.

10   McChristian and Plett declare that after they handcuffed plaintiff, McChristian advised plaintiff of

11   his *Miranda* rights. Dt. No. 432 ¶ 6; Dkt. No. 433 ¶ 7. Plaintiff's opposition brief claims that

12   defendants' motion "falsifies that *Miranda* rights was [sic] administered on Pltf.," Dkt. No. 449 at

13   17, but plaintiff cites no evidence in support of this allegation.

14           Under the "routine booking question" exception, even after an arrestee asserts the right to

15   remain silent, law enforcement officials may ask questions to secure the "biographical data

16   necessary to complete booking or pretrial services." *Pennsylvania v. Muniz*, 496 U.S. 582, 601

17   (1990); *see also United States v. Foster*, 227 F.3d 1096, 1103 (9th Cir. 2000). McChristian and

18   Plett declare that after they took plaintiff to a holding cell, while McChristian initially asked

19   plaintiff investigative questions, after plaintiff indicated that he did not want to answer any

20   questions, McChristian ceased asking investigative questions. Dkt. No. 432 ¶ 7; Dkt. No. 433 ¶ 8.

21   Plett then asked plaintiff "biographical questions needed to fill out booking forms." Dkt. No. 433

22   ¶ 8. While plaintiff argues that he was questioned after saying that he did not want to talk, Dkt.

23   No. 449 at 21, plaintiff does not cite any evidence of what questions he was asked, if any, beyond

24   the administrative booking questions referenced by the deputies.

25           On these facts, even if McChristian and Plett had asked plaintiff some investigative

26   questions after he invoked his right to remain silent, they would have been entitled to qualified

27   immunity. With respect to the Fifth Amendment's Self-Incrimination Clause, "[o]nly after a

28

5:13-cv-00228-RMW

ORDER RE: MOTS. FOR SUMMARY J. -- CLAIMS INVOLVING MCCHRISTIAN, PLETT, AND POLUMBUS

United States District Court
Northern District of California

compelled incriminating statement is used in a criminal proceeding has an accused suffered the requisite constitutional injury for purposes of a § 1983 action." *Aguilera v. Baca*, 510 F.3d 1161, 1173 (9th Cir. 2007) (citing *Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (plurality opinion)). Hiramanek has submitted no evidence that defendants used any incriminating statements he made following his June 29, 2012 arrest in a criminal proceeding against him. Moreover, while "[t]he Due Process Clause of the Fourteenth Amendment protects against any government conduct that 'shocks the conscience,'" *Crowe v. County of San Diego*, 608 F.3d 406, 431 (9th Cir. 2010), plaintiff has cited no authority for the proposition that merely asking investigatory questions meets this high standard, particularly when the answers are not used against the arrestee. Accordingly, qualified immunity would protect McChristian and Plett from liability.[7]

Based on the undisputed factual record presented to the court, the court finds that McChristian and Plett did not violate plaintiff's *Miranda* rights following the June 29, 2012 arrest.

### b.    Excessive Force / Cruel and Unusual Punishment

Finally, defendants argue that there is no evidence to suggest that they unconstitutionally denied plaintiff water or pain medication following his arrest.[8] Dkt. No. 430 at 18-19. The parties appear to agree that a deliberate indifference standard governs plaintiff's claims that he was denied water or pain medication. Dkt. No. 430 at 18; Dkt. No. 449 at 21. Plaintiff and defendants cite *Farmer v. Brennan* for the proposition that a law enforcement official may be held liable under the Eighth Amendment if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Claims by pretrial detainees are analyzed under the Fourteenth

---

[7] Plaintiff also argues that McChristian and Plett did not advise him of the charges against him at time of arrest. Dkt. No. 449 at 21. In support of this allegation, plaintiff cites his own unofficial transcript of McChristian's deposition. However, the cited transcript, even if it were admissible, indicates that McChristian did eventually inform plaintiff of the charges against him. *See* Dkt. No. 439 Ex. J at 36:8-11 (Q: "And you didn't tell me. You said we will tell you later." / A: "I said to you all the charges later. But the main charge is forgery.").

[8] The court notes that defendants' motion does not appear to seek summary judgment for plaintiff's claims of excessive force for Plett allegedly twisting plaintiff's arm during arrest.

20

1    Amendment Due Process Clause, rather than under the Eighth Amendment." *Frost v. Agnos*, 152

2    F.3d 1124, 1128 (9th Cir. 1998). "Because pretrial detainees' rights under the Fourteenth

3    Amendment are comparable to prisoners' rights under the Eighth Amendment, however, we apply

4    the same standards." *Id.*

5         McChristian and Plett argue that it is undisputed that they did not deny plaintiff water

6    because they allowed plaintiff to stop at a drinking fountain at the time plaintiff was taken into

7    custody. Dkt. No. 432 ¶ 6; Dkt. No. 433 ¶ 7. Plaintiff cites no evidence to dispute defendant's

8    declarations that plaintiff was allowed to drink from a drinking fountain at the time of arrest.

9    Rather, plaintiff's argument appears to be that he was not offered food or water later while he was

10   in his holding cell. Plaintiff appears to start counting the time since he last had food or water from

11   the night before he was arrested, when he was not yet in custody. *See* Dkt. No. 449 at 19 (asserting

12   that plaintiff "had no food or water since 16 hours prior to his arrest and the whole day of the

13   arrest"). Moreover, plaintiff has presented no evidence that he asked McChristian or Plett for food.

14   The court also notes that plaintiff's complaint alleges that plaintiff "was prescribed pain killing

15   medication and asked to be off food for 24 hours" following a root canal. RSAC ¶ 1066. Plaintiff's

16   summary judgment briefs cite no evidence to show how long he was held, and thus the court is

17   unable to determine whether plaintiff was even in custody when this 24-hour period expired. On

18   this record, the court concludes that plaintiff has not presented a prima facie case that McChristian

19   or Plett showed deliberate indifference by not ensuring plaintiff had food or water.

20        As for plaintiff's allegation that he was denied pain medication following a root canal,

21   McChristian and Plett declare that they did not know plaintiff needed pain medication or that he

22   had any on his person. Dkt. No. 432 ¶ 6; Dkt. No. 433 ¶ 7. Plaintiff's only cited evidence that

23   defendants actually knew he wanted pain medication is an "admission" in defendants' motion in

24   which defendants state that they "knew that Hiramanek was thirsty and wanted water due to pain

25   medications he allegedly took for a dental procedure ***the night before***." Dkt. No. 449 at 21 (citing

26   Dkt. No. 430 at 19) (emphasis added). The court finds that the quoted text does not show that

27   defendants knew that plaintiff was requesting pain medication while he was in custody or that he

28

United States District Court
Northern District of California

5:13-cv-00228-RMW
ORDER RE: MOTS. FOR SUMMARY J. -- CLAIMS INVOLVING MCCHRISTIAN, PLETT, AND POLUMBUS

United States District Court
Northern District of California

had any pain medication on his person. Even if knowledge of plaintiff's root canal the previous evening might allow McChristian and Plett to infer that plaintiff might request additional pain medication, plaintiff has provided no analysis for why that the failure to take pain medication exposed him to "substantial risk of serious harm." Moreover, plaintiff has presented no evidence that McChristian or Plett actually drew the inference that plaintiff was in need of pain medication. To the contrary, both defendants submitted unrebutted declarations indicating that plaintiff did not ask for pain medication or appear to be in pain when he was in their custody. Dkt. No. 432 ¶ 6; Dkt. No. 433 ¶ 7. The court finds that plaintiff has not presented sufficient evidence to defeat summary judgment on his claim that he was unconstitutionally denied medication. Moreover, because plaintiff has not shown that the lack of pain medication violated a constitutional right, McChristian and Plett are entitled to qualified immunity.

Accordingly, McChristian's and Plett's motion for partial summary judgment on claim 44 is granted.

### D.   Plaintiff's Motion for Summary Judgment Against the Deputies

Plaintiff moves for summary judgment on the merits of his claims against the sheriff's deputies. Dkt. No. 438 at 7-9. The analysis above explains why plaintiff's arguments on the merits of his claims are unpersuasive. Plaintiff moves for summary judgment on two additional grounds.

First, plaintiff argues that he is entitled to summary judgment (and that defendants are not entitled to summary judgment) due to alleged "discovery disobedience" by defendants and their counsel. *See* Dkt. No. 438 at 4-6; Dkt. No. 449 at 23. Plaintiff's arguments rely on various discovery motions that plaintiff previously filed and that the assigned magistrate judge in this case subsequently denied. *See* Dkt. No. 451. Moreover, contrary to plaintiff's suggestion, it is undisputed that plaintiff was eventually able to obtain deposition testimony from Plett. *See, e.g.*, Dkt. No. 449 at 6-7 (citing Plett's deposition testimony). Plaintiff's motion for summary judgment as a discovery sanction is denied.

Second, plaintiff moves for summary judgment on defendants' affirmative defenses. Dkt. No. 438 at 5-6. Because the court finds that plaintiff has not met his burden of proof, the court

1    need not decide whether the defendants proffered sufficient evidence in support of their remaining

2    affirmative defenses.

3    **III.     ORDER**

4            For the reasons explained above, defendants' motion for partial summary judgment, Dkt.

5    No. 430 is GRANTED. Plaintiff's motion for partial summary judgment, Dkt. No. 438, is

6    DENIED. Of the claims plaintiff asserted against McChristian, Plett, and Polumbus, the court

7    understands that the only claim that remains in this case is plaintiff's allegation under Claim 44

8    that Plett used excessive force by twisting plaintiff's arm during his arrest on June 29, 2012.

9            A case management conference will be held on Friday, September 16 at 10:30 a.m. in

10   courtroom #6, 4th floor of the U.S. Courthouse, 280 South First Street, San Jose, California to set

11   an appropriate schedule for the pretrial conference and trial of the remaining excessive force claim

12   against Plett. Subject to input from the parties, the court tentatively believes that the trial of the

13   claim against Plett should commence on or about October 11, 2016. The parties shall file a Joint

14   Case Management Statement by September 9, 2016.

15           **IT IS SO ORDERED.**

16   Dated: September 1, 2016

17   _____

18   Ronald M. Whyte
     United States District Judge

19

20

21

22

23

24

25

26

27

28

5:13-cv-00228-RMW
ORDER RE: MOTS. FOR SUMMARY J. -- CLAIMS INVOLVING MCCHRISTIAN, PLETT, AND POLUMBUS

United States District Court
Northern District of California